Danell HOLMES, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 27A02–9012–CR–760 [1].

Court of Appeals of Indiana,
Fifth District.

Dec. 30, 1991.

Rehearing Denied Jan. 28, 1992.

Transfer Denied March 11, 1992.

1. This case has been diverted to this office by order of the Chief Judge.

Susan K. Carpenter, Public Defender, Indianapolis, Margaret Hills, Special Asst., Frankfort, for appellant-defendant.

Linley E. Pearson, Atty. Gen., Louis E. Ransdell, Deputy Atty. Gen., Indianapolis, for appellee-plaintiff.

SHARPNACK, Judge.

Danell Holmes appeals her conviction following a jury trial of maintaining a common nuisance, a Class D felony pursuant to Ind.Code § 35–48–4–13(b)(2).[2] The charge against her as alleged in the state's information was that

on or about April 11, 1990, Danell M. Holmes did knowingly maintain a structure, to-wit: 1015 Terrace Avenue, Marion, Grant County, Indiana, the structure being used for unlawfully *selling* controlled substances, to-wit: cocaine, contrary to the form of the statutes in such cases made and provided by I.C. 35–48–4–13(b)(2) (emphasis added)....

(Record, p. 7.) Because we reverse, we need only address the issue of whether the evidence was sufficient to support the defendant's conviction.

The facts most favorable to the jury's verdict are as follows. On April 11, 1990, the Marion Police Department Joint Effort Against Narcotics, ("JEAN TEAM"), arranged a controlled buy between their informant, Kevin Bullard, and Roger Boothby. Boothby was not home when Bullard arrived at Boothby's residence to make the purchase, but rather arrived shortly thereafter. Around 11:00 p.m., after receiving a phone call, Boothby left to pick up the "eight-ball" of cocaine that Bullard requested. The police followed Boothby to the residence of Danell and Keith Holmes. After spending approximately 10 minutes inside the Holmes's residence, Boothby returned to his own home where he sold more than three grams of cocaine to Bullard.

After the police arrested Boothby, he told them that he had dealt with Danell's husband, Keith, to get the cocaine. According to Boothby, the transaction took place in the front room of the Holmes's residence in the presence of only himself, Keith Holmes and Danell's brother, Gary Haynes. Sometime around 3:00 a.m., the police entered the Holmes's residence with a search warrant. One of the officers involved in the search spotted Danell coming out of the bedroom.[3]

As a result of their search, the police recovered assorted drug paraphernalia,[4] a small amount of marijuana, two handguns from inside the front door, and a total of twenty-one rifles and shotguns, which had been wrapped and stored in the attic. The police recovered no cocaine.

During their search, one of the police officers asked Danell if she knew where "any more cocaine or anything was hidden." (Record, p. 253.) The officer testified that Danell responded by stating that while she knew "they used it," she did not know "where they kept it and that when they used the cocaine and such she would go into the bedroom." (Record, p. 353.)

Keith and Gary were charged with dealing in cocaine and conspiracy to deal in cocaine, both Class A felonies. After a joint trial, the jury found Danell and Keith guilty of maintaining a common nuisance, and Keith and Gary guilty of dealing in cocaine and conspiracy to deal in cocaine.

Among the many issues raised by Ms. Holmes on appeal is her argument that the evidence was insufficient to prove beyond a reasonable doubt they she knew her residence was being used for the unlawful sale

---

**2.** I.C. § 35–48–4–13(b) provides, in relevant part, that a person who knowingly or intentionally maintains a building that is used by persons to unlawfully use or offer for sale controlled substances commits maintaining a common nuisance.

**3.** This same officer testified that he may have entered the bedroom and aroused Ms. Holmes from sleep. (Record, p. 205.)

**4.** The paraphernalia included a glass dish, razor blades, rolling papers, sandwich bags, pipes, glass vials, roach clips, sifters, filters, an ashtray, a small spoon, shortened straws and scales.

of cocaine on the night of April 11. We agree.

When we review the evidence supporting a conviction, we may not reweigh the evidence or judge the credibility of the witnesses. *Washington v. State* (1982), Ind., 441 N.E.2d 1355, 1358. Where the evidence is in conflict, we are bound to view only that evidence which is most favorable to the verdict and all reasonable inferences therefrom. *Id.; Morgan v. State* (1983), Ind.App., 445 N.E.2d 585. If there is substantial evidence of probative value from which the trier of fact could conclude guilt beyond a reasonable doubt, we must affirm the conviction. *Morgan,* 445 N.E.2d 585.

The state concedes that, pursuant to I.C. § 35–48–4–13(b)(2), knowledge of selling is a necessary element of proving the crime of maintaining a common nuisance. The state argues that, from the following evidence, we may reasonably infer that Ms. Holmes knew of the illegal sale of cocaine from her residence on the evening of April 11. First, the state directs us to both the volume of drug paraphernalia and the number of guns recovered from Ms. Holmes's residence. Second, the state refers us to the fact that Ms. Holmes's close relatives sold drugs from her home. Third, the state points us to the fact that Ms. Holmes was present in the house at the time of the drug sale of April 11.

We begin our analysis by stating that any evidence that tends to connect the accused with the commission of the crime charged is considered admissible evidence. *Sayre v. State* (1984), Ind.App., 471 N.E.2d 708, *cert. denied,* 475 U.S. 1027, 106 S.Ct 1226, 89 L.Ed.2d 336. "Evidence is relevant if it tends to prove or disprove a material fact or sheds light on the guilt or innocence of the accused." *Id.* at 716.

In *Sayre,* the third district considered a defendant's appeal from a conviction of maintaining a common nuisance pursuant to I.C. § 35–48–4–13(b) and stated:

The possession of paraphernalia which is associated solely with the use of controlled substances is not probative on the

issue of whether the defendant kept controlled substances in the building.

*Sayre,* 471 N.E.2d at 716.

In *Bass v. State* (1987), Ind.App., 512 N.E.2d 460, *rehearing granted in part by Bass v. State* (1988), Ind.App., 517 N.E.2d 1238, *trans. denied,* the fourth district considered two defendants' appeals from the conviction of visiting a common nuisance pursuant to I.C. § 35–48–4–13(a) and stated:

The existence of paraphernalia which is associated solely with the use of controlled substances may be probative of the issue of whether a controlled substance was used in the building. We, however, do not find such evidence to be conclusive on the issue of whether the defendant knew of such use even if the paraphernalia was in plain view.

*Bass,* 512 N.E.2d at 463.

In following *Sayre* and *Bass,* the evidence of the drug paraphernalia that the police seized during their search of the Holmes's residence, associated solely with the use of controlled substances, is not probative on the issue of whether Ms. Holmes knew cocaine was being sold from her residence on the night of April 11.

If we eliminate from the evidence all the paraphernalia associated solely with the use of controlled substances, the remaining paraphernalia which might be of probative value in Ms. Holmes's case would include the scales, possibly the pipes, and the unidentified quantity of unaltered sandwich bags recovered from the Holmes's kitchen cabinets. Additional evidence which might be of slight probative value on this issue would be the presence of the firearms within Ms. Holmes's residence. In considering this evidence, however, we must also recognize that the state does not prohibit persons from possessing, within their dwellings, shotguns and rifles, and pursuant to a valid license, handguns. I.C. § 35–47–2–1. The state on appeal does not challenge the validity of the Holmes's licenses to possess or carry the firearms at issue here.

As our standard of review directs, we have searched the record to determine whether there is substantial evidence of

probative value from which the trier of fact could conclude Ms. Holmes's guilt beyond a reasonable doubt. We have determined that the aforementioned evidence, while slightly probative on the issue, was not of such substantial probative value that the trier of fact could conclude, beyond a reasonable doubt, that Ms. Holmes knew of the drug transaction which took place among three other parties on April 11.

The state next asks us to infer that Ms. Holmes must have been aware of the illegal drug sale of April 11 because her close relatives were involved in the sale from within her residence. This argument by the state must fail. First, the state presents us with no authority to support such a strained proposition. Second, we hold that a jury could not reasonably infer that Ms. Holmes had knowledge of all of the activities of both her husband and her brother, even those activities occurring within her residence.

Finally, the state asks us to infer that Ms. Holmes had knowledge of the April 11th drug sale simply from the fact that Ms. Holmes was present in the house at the time of the transaction. Of assistance to our analysis here is the analogous case of *Riding v. State* (1988), Ind.App., 527 N.E.2d 185, in which the second district determined that the defendant's *exclusive* control of the room where the drugs had been found was sufficient evidence to establish that he knowingly maintained a place for keeping controlled substances. The court in *Riding* considered both the large amount of marijuana found in the defendant's locked room and the presence of a scale used for weighing the marijuana to infer that the defendant maintained the room for the purpose of selling marijuana. *Id.* at 188.

In Ms. Holmes's case, the state did not charge Ms. Holmes simply with keeping controlled substances within her residence, but rather with knowing that cocaine was sold from within her residence. The state did not present evidence that Ms. Holmes was in exclusive control of the residence from which the drugs were sold, that Ms. Holmes was present during the drug transaction of April 11, or that the police recovered any cocaine from its search of the Holmes's residence. In order to infer that there was a high probability that Ms. Holmes knew her residence was being used for the unlawful sale of cocaine on the night of April 11, the jury would have to assume that, simply because Ms. Holmes was present within her own residence during the drug deal, she knew of the drug deal. Such an inference would be unreasonable.[5]

In reaching our result,

[w]e recognize the rule that we may not weigh the evidence and may only review that evidence most favorable to the state to determine, on a sufficiency of the evidence question, whether we shall affirm or reverse the judgment of the trial court. Such appellate duty, of which we take cognizance, in far too many cases requires that we probe and sift the evidence. Thus, if as a result of our probing and sifting the evidence most favorable to the state, we determine that the residue of facts is so devoid of evidence of probative value and reasonable inferences adduceable therefrom, as to preclude guilt beyond a reasonable doubt, we should so declare. A failure to do so is a rejection of our duty as an appellate tribunal and tantamount to the enunciation of a rule that any evidence no matter how infinitesimal or inferences drawn therefrom, whether based on speculation or conjecture, would be sufficient to establish guilt beyond a reasonable doubt.

5. Although the state does not argue that Ms. Holmes's statement to the police concerning her knowledge of the fact that her husband and her brother used cocaine within her home is probative on the issue of whether Ms. Holmes knew that the two sold cocaine from her residence on April 11, we hold that Ms. Holmes's statement is slightly probative on the issue. However, we also hold that Ms. Holmes's statement, at best, establishes only her knowledge that her husband and her brother used cocaine within her home, and that her statement is of the same general quality as the other evidence which we have determined is of insufficient probative value to prove that Ms. Holmes knew, beyond a reasonable doubt, that her husband and her brother sold cocaine from her home on the night in question.

This we are not inclined to do for to assume such a judicial posture, neglecting our appellate responsibility, would reduce the appellate process to an exercise in impotent and meaningless futility. (citations omitted)

*Liston v. State* (1969), 252 Ind. 502, 250 N.E.2d 739, 743–44.

In this case, the state has proven that Ms. Holmes knew of drug use by her husband and her brother within her residence, that the police recovered assorted drug paraphernalia and firearms from the Holmes's residence during the early morning hours of April 12, and that Ms. Holmes was present somewhere within the residence during the drug transaction of April 11. However, for the reasons we have set out, we hold that there was not sufficient evidence of probative value from which reasonable inferences could be drawn to establish beyond a reasonable doubt an essential element of the crime with which Ms. Holmes was charged: that Ms. Holmes knew her residence was used for the unlawful sale of cocaine on the evening of April 11. We therefore reverse.

Because we have found the evidence insufficient to sustain the jury's verdict of guilty, the double jeopardy clause precludes a second trial for Ms. Holmes, and the only just remedy available is the entry of a judgment of acquittal. *Smith v. State* (1979), 270 Ind. 479, 386 N.E.2d 1193.

REVERSED.

RUCKER and SULLIVAN, JJ., concur.