**In re the Marriage of John MATULA, Appellant–Petitioner,**

v.

**Bobbie J. BOWER f/k/a Bobbie J. Matula, Appellee–Respondent.**

No. 64A03–9312–CV–421.

Court of Appeals of Indiana, Third District.

May 23, 1994.

Transfer Denied Sept. 2, 1994.

Edward P. Grimmer, Crown Point, for appellant-petitioner.

Michael D. Dobosz, Hilbrich, Cunningham & Schwerd, Highland, for appellee-respondent.

GARRARD, Judge.

John Matula appeals the modification of his child support obligation for his daughter, and his former wife, Bobbie J. Bower, cross-appeals, arguing that the trial court miscalculated the child support obligation.

## FACTS

Matula and Bower were divorced on October 11, 1988. The only child of their marriage, Betsy, was three years old at the time of the divorce. The court ordered joint legal custody and granted primary physical custody to Bower. Matula was awarded visitation on alternating weekends and weekly from Tuesday evenings to Thursday mornings, and he was ordered to pay support in the amount of $70.00 per week.

In April of 1993, Bower filed a petition for modification of child support and Matula filed a petition to modify visitation. The court granted the petition to modify visitation, allowing Betsy to stay until Monday morning on every weekend spent with her father. The court also granted the petition to modify child support, making the following relevant findings and conclusions:

1. There has been a change of circumstances sufficient to warrant both a change of the current order on physical custody or visitation and for a change of support, all in the best interest of the child.

2. Father earns $73,000.00 per year; mother earns $43,000.00.

3. Mother has remarried and has two children by the subsequent marriage, so that it is appropriate under the Child Support Guidelines to multiply her earnings by .903 before determining her average weekly income.

4. Father has not remarried or had subsequent children. He does pay additional $12.00 per week for health care insurance for the minor child Elizabeth, a/k/a Betsy. Additionally, he has visitation or physical custody under the joint custody arrangement approximately 50% of the time, which he exercises regularly. Further, this visitation is greater than normal visitation. He also maintains a wardrobe for the child at his home. He recently suffered a heart attack and underwent an angioplasty, this being an extraordinary medical condition with associated expenses.

. . . .

2. Support is modified and ordered pursuant to the guidelines, so that John shall pay to Bobbie, for the benefit of Betsy, the sum of $161.00, which is inclusive of a reasonable portion of the total child care expenses of Betsy, and that mother shall pay annually the first $837.00 of uninsured health care expenses, exclusive of over the counter expenses, and further shall pay all normal educational expenses of the child, all retroactive to April 26, 1993, the date her petition for child support was filed. After payment of the initial uninsured medical expenses, the parties shall split, 65% for father and 35% for mother, all of the child's uninsured health care expenses.

3. The court declines to deviate from the guidelines, as requested by father, because of joint custody or because Mother now has a household with two subsequent children by her current marriage.

(R. 108–109).

## DISCUSSION

Matula argues on appeal that he presented sufficient evidence to rebut the presumption of the child support guidelines, while Bower maintains on cross-appeal that the trial court miscalculated the appropriate amount of child support.

■ Support awards determined under the child support guidelines are presumptively correct. *Nill v. Nill* (1992), Ind.App., 584 N.E.2d 602, 610, *reh'g denied, trans. denied.* An obligor seeking deviation from the guideline amount must present evidence such that the court can conclude that an order for the guideline amount would be unjust or inappropriate under existing circumstances. *Gielsdorf–Aliah v. Aliah* (1990), Ind.App., 560 N.E.2d 1275, 1278; Ind.Child Support Guideline 3(F)(2). The modification of a child support order is within the discretion of the trial court and will not be disturbed upon appeal unless there is no substantial evidence to support the finding of the trial court. *Matter of Paternity of C.B.* (1992), Ind.App., 592 N.E.2d 692.

■ Matula argues that the following facts warranted a deviation from the presumptive child support amount: that he provides funds for Betsy's clothes, medical and educational expenses; that he has incurred extraordinary medical expenses due to his heart condition; and that he spends more than an average amount of time with his daughter. While all of these factors may be considered in determining whether to deviate from the guideline amount,[1] we conclude that the trial court did not abuse its discretion in concluding that the guideline amount was not inappropriate under these conditions. First, nothing in the record indicates the amount of expense incurred for Matula's medical condition, offering the court no evidence upon which to base a deviation from the guideline amount. Further, Matula received a ten percent reduction in child support as a result of the extended time he spends with his daughter. *See* Commentary, Child Supp.G. 6. Finally, any additional clothing, medical and educational expenses incurred by Matula should properly be viewed as a gratuity or a voluntary contribution for the support of his daughter. *See Fiste v. Fiste* (1994), Ind.App., 627 N.E.2d 1368, 1373. The trial court did not abuse its discretion in failing to deviate from the guideline amount of child support.

■ We now turn our attention to Matula's main argument for deviation from the support guidelines, which is his contention that it was an abuse of discretion for the trial court to use the support guidelines for one child where Betsy is now a part of a family which includes two other children, born to her mother and step-father. Matula argues that he is now subsidizing a high standard of living for this new blended family, and that as a result Betsy does not receive all of the child support. Matula argues that it is unfair for the mother to receive a downward adjustment in her support obligation due to her additional two children while he receives no similar adjustment and continues to pay for the initial, most expensive child in the household. Matula concludes that a fair alternative is that he should pay the difference between the second and third children columns of the guidelines, which would amount to $103.00 per week. We do not find Matula's argument to be persuasive.

Matula admits that there is no authority directly supporting his argument, and that what he requests is a new interpretation of the child support guidelines. However, Matula contends that the court of appeals decision in *Matter of Paternity of Humphrey* (1990), Ind.App., 561 N.E.2d 502, provides a basis for the interpretation he urges us to adopt. We note to counsel for both parties that the opinion of the court of appeals in this case was vacated by the supreme court in *Matter of Paternity of Humphrey* (1991), Ind., 583 N.E.2d 133, *reh'g denied*, which reached the same result as the court of appeals but rejected the theory underlying the case. In any event, we do not believe that this case leads to the conclusion sought by Matula.

In *Humphrey*, the father was ordered to pay the presumptive amount of child support for his son, although the mother had three other children whom he had not fathered. The mother was unemployed and her household income consisted of AFDC payments and food stamps. Pursuant to 42 U.S.C. § 657(b), mother was required to assign all child support monies to the Indiana Department of Public Welfare. The first $50.00 of child support would be disbursed to her, and any remaining amount would be retained by

---

1. *See* Commentary, Child Supp.G. 1.

the welfare department as reimbursement for the AFDC benefits previously received. The father argued that the result of this was that only $50.00 of his support was going to his son, while the remainder went to reimburse the AFDC program for money it had spent providing for the entire family, including the three additional children. The supreme court concluded that the father had rebutted the presumptive amount under the guidelines because he had shown that paying the presumptive amount required him to support children who were not his own. *Id.* at 135. The case was remanded with instructions to determine the amount of AFDC payments which were fairly attributable to his son.

We believe the facts of *Humphrey* are clearly distinguishable from the case at bar. While Matula has no legal obligation to support children who are not his own,[2] neither do we believe he has the right to have his support obligation to his daughter reduced simply because children who are not his own live with his daughter. Matula has failed to prove that the support he is paying is not being used for his child and is instead being used to support the other children of the family. Bowers rightfully received a credit on her support obligation because she has a duty to support all three children in the new blended family; however, we cannot conclude that Matula should receive a similar reduction for children who are not his own.[3] As Matula has not shown that paying the presumptive amount of child support would require him to support children other than his daughter or that any of the funds are not being used to support his daughter, we conclude that there was no abuse of discretion in ordering the presumptive amount of child support.

On cross-appeal, Bowers maintains that the court miscalculated the amount of child support. While the court's order does not articulate the amount used for work-related child care, the record reflects that the court used the amount of $40.00 per week. (R.

104). Assuming that the court intended to use this amount, and using the findings in the court's order, we agree with Bower that the correct amount of child support for Matula is $183.00 per week. Therefore, we remand with instructions to clarify the amount used for work-related child care and for entry of the appropriate child support amount consistent with this opinion. In all other respects, the judgment is affirmed.

STATON and CHEZEM, JJ., concur.

---

**2.** *See Humphrey,* 583 N.E.2d at 135 (parents have no legal obligation to support any children other than their own).

**3.** We observe under the guidelines that, if Matula had additional children of his own, he would receive a credit under the child support guidelines. Commentary, Child Supp.G. 3.