Dale Q. MARMADUKE, Appellant–Respondent,

v.

Terese J. MARMADUKE, Appellee–Petitioner.

No. 49A04–9401–CV–10.

Court of Appeals of Indiana, Fourth District.

Sept. 29, 1994.

Transfer Denied Dec. 28, 1994.

Bradley W. Skolnik, Freihofer, Minton, Keeler & McClamroch, Indianapolis, for appellant.

Gregory P. Schmith, Indianapolis, for appellee.

RILEY, Judge.

### STATEMENT OF THE CASE

Respondent–Appellant Dale Q. Marmaduke (Dale) appeals from the modification of his child support obligation for the two minor children born during his marriage with Petitioner–Appellee Terese J. Marmaduke (Terese). We affirm.

### ISSUE

Dale presents the following issue for our review: Whether the trial court erred in determining Dale's child support obligation.

### FACTS AND PROCEDURAL HISTORY

After six years of marriage, and the birth of two children, Dale and Terese divorced.

A decree of dissolution was entered on July 10, 1989, which awarded sole custody to Terese. Dale was awarded visitation based on the then existing Marion County Child Visitation Guidelines. The guidelines permitted visitation for Dale on alternating weekends from 6 p.m. on Friday until 7 p.m. on Sunday. In addition to alternating weekends, holiday and birthday visitation, the guidelines provided for extended summertime visitation. Dale was permitted to have visitation for two non-consecutive three week periods during the summer months, during which time his child support obligation would be abated by 50%.

Under this order, the court determined Dale's child support obligation pursuant to the Indiana Child Support Guidelines: $140 per week plus $78 per week toward Terese's work-related child care expenses. Pursuant to Dale's petition to modify, the court entered its first modification of the decree on February 25, 1992. Dale was granted additional visitation of one overnight per week, alternating spring breaks, and permission to enroll the children in extra-curricular activities. Dale's child support obligation was increased to $150 per week plus $66 per week for day care and busing expenses. The court found that there should be a deviation from the child support guidelines to allow Dale to pay the day care expenses directly to the day care center so that he could take advantage of his FlexPlus benefits thereby reducing his taxable income. The court specifically articulated that it was "allowing this benefit to [Dale] in consideration for the extra expenses he is paying pursuant to this modification such as the extra meals, transportation and extracurricular activities, therefore, there shall not be allowed any other deduction by [Dale] for said expenses." (R. 215). The court further directed Dale to pay the sum of $400 for Terese's attorney fees.

On June 24, 1993, Dale filed a second petition for modification of the decree. Dale requested additional visitation and a reduction in his child support obligation among other things. After hearing evidence and taking the matter under advisement, the trial court issued its order on modification on July 27, 1993.

The court found that there had been a change in circumstances so substantial and continuing that the terms of the original decree and subsequent modification should be modified. Specifically, the court modified Dale's support obligation to $126 per week. In so doing, the court acknowledged that the Indiana Child Support Guidelines recommended support in the amount of $204 per week. However, the court reduced the recommended amount by 64% of the day care expenses and 10% for regular and frequent visitation by Dale. The court further granted Dale visitation of one additional overnight per week. Dale appeals the trial court's order on modification as it relates to his support obligation.

## STANDARD OF REVIEW

Traditionally, we have reviewed the trial court's determination of child support obligations under an abuse of discretion standard. This has been modified however by the adoption of the Indiana Child Support Guidelines.

In the *Matter of Paternity of Humphrey* (1991), Ind., 583 N.E.2d 133, *reh'g denied,* our supreme court announced the new standard for appellate review of support orders. This was the court's first opportunity to explore the issue since the adoption of the Indiana Child Support Guidelines on October 1, 1989. The court adopted the same standard as this court announced for division of property cases in dissolution proceedings. *See In re Marriage of Davidson* (1989), Ind. App., 540 N.E.2d 641, *reh'g denied.* In *Davidson,* we said that trial court decisions which deviate from the 50–50 presumption in division of property cases should be affirmed unless the decision is clearly erroneous. *Id.* at 645. Thus, reversal is required only where the trial court's decision is against the logic and effect of the facts and circumstances before the trial court. *Id.* Our supreme court in *Humphrey* adopted this standard of review reasoning that "trial courts must utilize the same mode of analysis whether dividing property or determining support (i.e., starting with a rebuttable presumption and setting forth reasons for any deviation)...." *Humphrey,* 583 N.E.2d at

134. Therefore, we will not disturb the trial court's support order unless it is clearly erroneous.[1]

## DISCUSSION AND DECISION

Dale contends that the trial court erred when it determined his child support obligation. Specifically, Dale argues that although he is not the custodial parent, he has the children approximately 50% of the time and therefore he should not be required to pay the full amount of presumptive child support pursuant to the Indiana Child Support Guidelines.

■ A trial court's calculation of child support obligations pursuant to the child support guidelines is presumptively valid. *Matula v. Bower* (1994), Ind.App., 634 N.E.2d 537, 539, *trans. denied.* The party seeking deviation from the guideline amount must convince the court that the guideline amount is unjust or inappropriate under the existing circumstances. Indiana Child Support Guideline 3(F)(2); *Matula*, 634 N.E.2d at 539.

The Guidelines are based on the Income Shares Model. Child Supp.G. 1. The model is predicated on the concept that the child should receive the same proportion of parental income that he or she would have received if the family had remained intact. Thus, the court is required to consider the financial resources of both parents and the standard of living the child would have enjoyed had the family stayed together.[2]

■ The court found that Dale's weekly gross income was $671 and Terese's weekly gross income was $377. The average work-related child care expenses were $100 per week. The court noted that the presumptive amount of Dale's child support obligation according to the child support guidelines was $204 per week. However, the court reduced that presumptive amount by 64% of the day care expenses and by an additional 10% for Dale's regular and frequent visitation. (R. 276). Thus, Dale's child support obligation was reduced to $126 per week. In issuing its order on modification, the court clearly articulated its reasons for deviating from the presumptive amount as set forth in the guidelines. Further, the court reiterated that the previously ordered 50% abatement remained in effect for Dale's extended summer visitation. *See* Child Supp.G. 6 commentary (provides for a recommended abatement of no more than 50% of the non-custodial parent's support obligation during visitation exceeding 7 days).

The guidelines contemplate the issue of support credit for time spent with the noncustodial parent during regular visitation. The trial court relied on the following commentary:

> If visits occur on alternate weekends, as is customary in many court orders, the noncustodial parent bears the costs associated with child rearing two (2) days of every fourteen (14) days, or 14.3% of the time. Taking into account the ongoing costs in the custodial home, it is recommended that support be reduced by up to ten percent (10%) per week in situations where the noncustodial parent would then have additional discretionary income to spend on the needs of the child(ren) while visiting.

Child Supp.G. 6, commentary.

We recently decided a similar case in which we affirmed the trial court's refusal to deviate from the presumptive child support amount. *Matula*, 634 N.E.2d 537. In *Matula*, physical custody of the couple's one child was awarded to the mother, and the father

---

1. Clearly erroneous means that, although there is evidence to support the trial court's decision, the record leaves the reviewing court with the firm conviction that a mistake has been committed. *Cox v. Cox* (1991), Ind.App., 580 N.E.2d 344, 348, *trans. denied.* A trial court's factual findings will not be found to be clearly erroneous unless the evidence contains no facts or reasonable inferences supporting the findings. *Kinsey v. Kinsey* (1993), Ind.App., 619 N.E.2d 929, 932, *reh'g denied.*

2. The Guidelines are consistent with Indiana Code 31–1–11.5–12 which provides that when determining child support obligations the trial court must consider all relevant factors including: "(1) the financial resources of the custodial parent; (2) the standard of living the child would have enjoyed had the marriage not been dissolved or had the separation not been ordered; (3) the physical or mental condition of the child and the child's educational needs; and (4) the financial resources and needs of the noncustodial parent." IND.CODE 31–1–11.5–12(a).

was awarded visitation on alternating weekends and two nights per week. The mother's gross income was $43,000, and the father's income was $73,000. We based our decision partially on the fact that the trial court reduced the father's support obligation by 10% for regular and frequent visitation. *Id.* at 539.

It was incumbent upon Dale, as the party seeking modification, to present evidence sufficient to rebut the presumption that the guideline amount was inappropriate. Dale presented the following evidence in support of his request for deviation from the child support guidelines: he pays for Spanish class, baseball, all transportation costs; maintains two bedrooms in his home; provides meals, toys and clothes, summer babysitting; and pays for vacations. Dale receives an abatement for his extended summer visitation. The additional clothes, toys, extra-curricular activities that Dale provides for his children are gratuitous or voluntary contributions by Dale. *See Fiste v. Fiste* (1994), Ind.App., 627 N.E.2d 1368, 1373 (any monies spent in excess of the child support order must be viewed as a gratuity or as a voluntary contribution for the support of the children). Furthermore, the trial court did deviate from the Guidelines when it reduced Dale's support obligation by 10% for regular and frequent visitation.

We find that the trial court was thoughtful and articulate in its order on modification. The trial court considered all of the facts and circumstances in arriving at its decision and we do not find the order to be clearly erroneous.

## CONCLUSION

Based on the foregoing, the trial court is affirmed in all respects.

GARRARD, J., and RATLIFF, Senior Judge, concur.