Lisa **FIELDS**, Appellant–Petitioner,

v.

Darrell **FIELDS**, Appellee–Respondent.

No. 25A03–0012–CV–441.

Court of Appeals of Indiana.

June 7, 2001.

Transfer Denied September 4, 2001.

Stephanie C. Doran, Kokomo, IN, Attorney for Appellant.

Kelly Leeman, Logansport, IN, Attorney for Appellee.

## OPINION

ROBB, Judge.

Lisa Fields ("Mother") appeals the trial court's order granting "temporary" custody of her two children to Darrell Fields ("Father") and the trial court's calculation of Father's child support obligation. On cross-appeal, Father challenges the trial court's order returning to Mother sole physical custody of the two children. We affirm.

### Issues

Mother raises the following restated issues for our review:

1. Whether the trial court properly determined Father's weekly gross income for purposes of child support calculation; and

2. Whether the trial court properly awarded Father "temporary" custody of the children due to Mother's intended move out of the state of Indiana.

On cross-appeal, Father raises the following restated issue for our review: whether the trial court properly returned to Mother sole physical custody of the two children without conducting a hearing based upon her relocation to Miami County.

### Facts and Procedural History

The facts reveal that Mother and Father were married on November 1, 1991. The marriage produced two children, M.F., born February 3, 1993, and L.F., born March 16, 1994. On February 12, 1998, Mother filed with the trial court a petition for dissolution of marriage. On April 29, 1998, the trial court entered a summary dissolution decree awarding the parties joint legal custody of the children with Mother having sole physical custody. After the divorce, Mother resided in Peru, Miami County, Indiana, and Father continued to reside in Kewana, Fulton County, Indiana.

On September 28, 2000, Mother filed with the trial court notification of intent to move out of the state of Indiana. Mother intended to move to Savoy, Illinois, on account of a new job. Consequently, on September 29, 2000, Father filed with the trial court an emergency petition to prevent the removal of the children from Indiana and a petition to modify custody. The trial court denied the emergency petition but conducted a hearing on Father's petition to modify custody pursuant to Indiana Code section 31–17–2–23. On November 14, 2000, the trial court entered an order awarding "temporary" custody of the children to Father, an order which provides in pertinent part:

1. The Court finds that a substantial and continuing change of circumstances exists but that the present circumstances may be temporary; in any event, the Court determines that the existing joint custody order is now unreasonable and not in the children's best interest.

2. The Court makes a temporary grant of custody to [Father].... As the Court makes clear in its Memorandum attached, this custody order will be reversed with permanent custody granted to [Mother] (without the need for further hearing) upon her restoration of residence in the Miami County or Fulton County area.

R. 55.

On November 29, 2000, Mother filed with the trial court a motion for restoration of custody stating that she had relocated to Miami County, Indiana. That same day, Father filed a motion with the trial court objecting to the automatic transfer of custody to Mother upon her moving to Miami County and a motion to correct error. Thereafter, the trial court, without conducting a hearing, entered an order dated November 29, 2000, which awarded sole physical custody of the two children to Mother and denied Father's motion to correct error. This appeal ensued.

### Discussion and Decision

### I. Mother's Appeal

#### A. Child Support

Mother first contends that the trial court erred in calculating Father's child support obligation because it did not consider Father's income derived from his self-employment as a farmer in determining his weekly gross income. We disagree.

#### 1. Standard of Review

The income shares model set forth in the Indiana Child Support Guidelines apportions the cost of children between the parents according to their means, and is based on the premise that children should receive the same portion of parental income after a dissolution that they would have received if the family remained intact. *Jendreas v. Jendreas*, 664 N.E.2d 367, 372 (Ind.Ct.App.1996), *trans. denied.* A trial court's calculation of a child support obligation under the child support guidelines is presumptively valid. *Marmaduke v. Marmaduke*, 640 N.E.2d 441, 443 (Ind.Ct.App.1994), *trans. denied.* Reversal of a trial court's child support order is merited only where the determination is clearly against the logic and effect of the facts and circumstances. *Kinsey v. Kinsey*, 640 N.E.2d 42, 43 (Ind. 1994). On appellate review of a child support order, weight and credibility issues are disregarded and only the evidence and reasonable inferences favorable to the judgment are considered. *Id.* at 43–44. Judges are advised to avoid the pitfall of blind adherence to the computation of support without giving careful consideration to the variables that require changing the result in order to do justice. *Id.*

#### 2. Calculation of Child Support

It is well-established public policy in Indiana that a primary concern of all three branches of Indiana government is the protection of the welfare of children. *See Straub v. B.M.T. by Todd*, 645 N.E.2d 597, 599 (Ind.1994). The paramount concern of a court in any case involving child support must be focused on the "best interests" of the child. *Whitman v. Whitman*, 405 N.E.2d 608, 613 (Ind.Ct.App. 1980). A parent has the common law duty to support his or her minor child—even without any court decree or order having

been entered. *Crowe v. Crowe,* 247 Ind. 51, 211 N.E.2d 164, 166 (1965). The matter of child support should not be looked upon as a game between divorced parents who are in disagreement. *Id.* Furthermore, the right to child support lies exclusively with the child, and a parent merely holds child support payments in trust for the benefit of the child. *Hamiter v. Torrence,* 717 N.E.2d 1249, 1255 (Ind.Ct.App. 1999). As the trial court is obligated to ensure that the best interests of children be advanced, the trial court is afforded broad discretion in fashioning orders designed to ensure that child support be paid. *Porter v. Porter,* 526 N.E.2d 219, 227–28 (Ind.Ct.App.1988).

 In 1989, the Indiana Supreme Court adopted the Child Support Guidelines to facilitate adequate support awards for children, to make awards more equitable by ensuring consistent treatment of persons in similar circumstances, and to improve the efficiency of the process of determining support. Ind. Child Support Guideline 1 & Commentary; *Garrod v. Garrod,* 655 N.E.2d 336, 338 (Ind.1995). There is a "rebuttable presumption that the amount of the award which would result from the application of the Indiana Child Support Guidelines is the correct amount of child support to be awarded." Ind. Child Support Rule 2. *See Matula v. Bower,* 634 N.E.2d 537, 539 (Ind.Ct.App. 1994), *trans. denied.* The party seeking deviation from the guideline support amount must convince the court that the guideline amount is unjust or inappropriate under the existing circumstances. Child Supp. G. 3(F)(2); *Matula,* 634 N.E.2d at 539.

In the present case, on February 12, 1998, the trial court approved an agreed provisional order which contained, among other things, Father's child support obligation. R. 13. On April 29, 1998, the trial court entered a summary dissolution decree which provides in pertinent part that:

There is presently an Agreed Provisional Order in place whereby [Father] pays directly through the court the sum of $80 per week. There has been a change in the Support Worksheet and a new one is filed with this Decree. Pursuant to agreement, [Father] shall pay $125 per week child support for the children not in his custody. The money shall be paid through the court system beginning the Friday following the date of this Decree. Support is not in compliance with the Support Guidelines.

R. 18. On April 24, 2000, the trial court approved an agreed order entered into by the parties modifying child support which provides in pertinent part:

That effective the first Friday after Court approval of this agreement, the Father's child support shall be set at $163.00 per week based upon the Indiana Child Support Obligation Worksheet. . . .

R. 33. The Worksheet lists Father's weekly gross income at $629.00. R. 35.

Following a hearing on Father's petition for modification of custody, the trial court on November 14, 2000, awarded sole custody of the two children to Father and set Mother's child support obligation at $130.00 per week. R. 55. The Indiana Child Support Obligation Worksheet utilized by the trial court listed Father's weekly gross income at $650.00. R. 54. A memorandum attached to the trial court's order provides in pertinent part that:

Of passing interest to the parties is that the Court adopts the position concerning support payments that [Father] has previously expressed. In this regard, the Court uses non-farm income as the basis to determine his income. The Court believes that his farm income is without significant cash flow in that he is farm-

ing basically as a life style choice at the present time without it effecting his income available (if it is effecting his available income, it is probably reducing it and that is a life style choice which he has made). On the other hand, the Court recognizes that he is probably increasing his net worth by his involvement in farming activities.

R. 57. After the trial court returned the two children to her sole physical custody, Mother appealed the trial court's determination of Father's weekly gross income arguing that the trial court erred in not including his self-employment income from farming in its calculations. It appears that the trial court only utilized Father's employment at Essoc Cement in calculating Father's weekly gross income at $650.00. Mother argues that the trial court failed to review, as required by Indiana Child Support Guideline 3, Father's deductions from his farming income. Mother argues that there was no evidence presented at trial that all of Father's substantial deductions on his income tax returns were reasonable and necessary for the production of income. Absent the invalid deductions, Mother argues Father obtained income from farming that should have been accounted for in calculating his weekly gross income.

The Indiana Child Support Guidelines address income from self-employment. Guideline 3 provides in pertinent part that:

A. Definition of Weekly Gross Income

* * *

(2) Weekly Gross Income from self-employment operation of a business, rent, and royalties is defined as gross receipts minus ordinary and necessary expenses. In general, these types of income and expenses from self-employment or operation of a business should be carefully reviewed to restrict the deductions to reasonable out-of-pocket expenditures

necessary to produce income. These expenditures may include a reasonable yearly deduction for necessary expenditures. Weekly gross income from self-employment may differ from a determination of business income for tax purposes.

Expense reimbursements or in-kind payments received by a parent in the course of employment, self-employment, or operation of a business should be counted as income if they are significant and reduce personal living expenses. Such payments might include a company car, free housing, or reimbursed meals.

Commentary to Guideline 3 provides in pertinent part that:

Calculating weekly gross income for the self-employed or for those who receive rent and royalty income presents unique problems, and calls for careful review of expenses. The principle involved is that actual expenses are deducted, and benefits that reduce living expenses (company cars, free lodging, reimbursed meals, etc.) should be included in whole or in part. It is intended that actual out-of-pocket expenditures for the self-employed, to the extent that they are reasonable and necessary for the production of income, be deducted. Reasonable deductions for capital expenditures may be included. While income tax returns may be helpful in arriving at weekly gross income for a self-employed person, the deductions allowed by the Guidelines may differ significantly from those allowed for tax purposes.

The record contains Father's federal and state tax returns from 1997 to 1999 that indicate that his farming produced no income for those years, but rather operated at a substantial loss. See R. 129–31. The tax deductions taken by Father, including depreciation, for his farming appear to be

legitimate, and there was no evidence presented at trial that these deductions were unreasonable or unnecessary to produce income. Thus, Father did not have any income from his farming operation to include in the calculation of his child support.

It is apparent from the record that Father's farming was a second job, and that the trial court utilized the income from his full-time employment at Essoc Cement as the basis for the computation of his weekly gross income for purposes of child support. Commentary to Guideline 3 addresses the situation where a parent works full-time at one job, and part-time at another.

There are numerous forms of income that are irregular or nonguaranteed, which cause difficulty in accurately determining the gross income of a party. Overtime, commissions, bonuses, periodic partnership distributions, voluntary extra work and extra hours worked by a professional are all illustrations, but far from an all-inclusive list, of such items. Each is includable in the total income approach taken by the Guidelines, but each is also very fact-sensitive.

Each of the above items is sensitive to downturns in the economy. The fact that overtime, for example, has been consistent for three (3) years does not guarantee that it will continue in a poor economy. Further, it is not the intent of the Guidelines to require a party who has worked sixty (60) hour weeks to continue doing so indefinitely just to meet a support obligation that is based on the higher level of earnings. Care should be taken to set support based upon dependable income, while at the same time providing children with the support to which they are entitled.

 We believe that a trial court must carefully scrutinize a parent's second job in determining weekly gross income,

and that a parent should not have to maintain a second job to satisfy a support obligation. The employment decisions a parent makes while married may not be as feasible when a parent is divorced and has visitation of his or her children. A situation can easily arise where the parent works two jobs or overtime hours to meet support obligations, but then has no time to have visitation with his or her children due to the hectic work schedule. Depending on the unique factual circumstances of a case, a parent's full-time employment or regular work hours may be appropriate for computation of child support so that the parent can have visitation with his or her children. Child support orders cannot be used to force parents to work to their full economic potential or make their career decisions based strictly upon the size of potential paychecks. *In the Matter of Paternity of Buehler*, 576 N.E.2d 1354, 1356 (Ind.Ct.App.1991). Here, the trial court carefully scrutinized Father's second job, farming, and concluded it was essentially a "life style choice" of the Father and should not to be considered in the computation of his support obligation. We find no error.

Because the evidence presented at trial established that Father's self-employment as a farmer produced no income, and that his second job was essentially a "life style choice," we cannot say that the trial court abused its discretion in only utilizing Father's income from Essoc Cement in calculating his weekly gross income for purposes of child support.

### B. Child Custody

Mother also contends that the trial court erred in awarding Father "temporary" custody of the two children in light of her intention to move out of the state of Indiana. We disagree.

#### 1. Standard of Review

 The modification of custody lies within the sound discretion of the trial

court. *Dwyer v. Wynkoop*, 684 N.E.2d 245, 250 (Ind.Ct.App.1997), *trans. denied.* Our review is limited to determining whether the trial court abused it discretion in applying the statutory guidelines. *Id.* We may neither reweigh the evidence nor judge the credibility of the witnesses. *Id.* Reversal is warranted only upon a showing of a manifest abuse of discretion, that is, when the trial court's decision is clearly against the logic and effect of the facts and circumstances. *Id.*

The trial court in this case entered special findings upon Father's request. We apply a two-tiered standard of review to special findings. First, we determine whether the evidence supports the findings. *Bloodgood v. Bloodgood*, 679 N.E.2d 953, 956 (Ind.Ct.App.1997). Second, we determine whether the findings support the judgment. *Id.* The judgment will be reversed only when clearly erroneous, i.e., when the judgment is unsupported by the findings of fact and conclusions thereon. *DeHaan v. DeHaan*, 572 N.E.2d 1315, 1320 (Ind.Ct.App.1991), *trans. denied.* Findings of fact are clearly erroneous when the record lacks any evidence or reasonable inferences from the evidence to support them. *Id.*

### 2. Modification of Custody

In an initial custody determination there is no presumption favoring either parent. Ind.Code § 31–17–2–8. The court assumes that the parties are equally entitled to custody, but makes a decision based on which parent would better rear the child. *Walker v. Chatfield*, 553 N.E.2d 490, 492 (Ind.Ct.App.1990). Custody is determined according to the best interests of the child. Ind.Code § 31–17–2–8.

A more stringent standard governs a party's request for a change in custody. *Lamb v. Wenning*, 600 N.E.2d 96, 98 (Ind.1992). In subsequent hearings to modify custody, the burden is on the petitioner to demonstrate that the existing custody order is unreasonable because permanence and stability are considered best for the welfare and happiness of the child. *Id.* A court may not modify a child custody order unless (1) the modification is in the best interests of the child; and (2) there is a substantial change in one or more of the factors a court may consider under Indiana Code section 31–17–2–8 when it originally determines custody. *See* Ind. Code § 31–17–2–21. Indiana Code section 31–17–2–8 provides that:

The court shall determine custody and enter a custody order in accordance with the best interests of the child. In determining the best interests of the child, there is no presumption favoring either parent. The court shall consider all relevant factors, including the following:

(1) The age and sex of the child.

(2) The wishes of the child's parent or parents.

(3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.

(4) The interaction and the interrelationship of the child with:

(A) the child's parent or parents;

(B) the child's sibling; and

(C) any other person who may significantly affect the child's best interests.

(5) The child's adjustment to the child's:

(A) home;

(B) school; and

(C) community.

(6) The mental and physical health of all individuals involved.

(7) Evidence of a pattern of domestic violence by either parent.

(8) Evidence that the child has been cared for by a de facto custodian, and if the evidence is sufficient, the court shall consider the factors described in section 8.5(b) of this chapter.

■■■■ When a custodial parent intends to relocate out of state, he or she is required to file notice of his or her intention to do so with the trial court. Ind. Code § 31–17–2–23(a). The purpose of this notice requirement is to afford the trial court an opportunity to modify the original custody order, if necessary. *Hanks v. Arnold,* 674 N.E.2d 1005, 1007 (Ind.Ct.App.1996). In determining the effect upon the non-custodial parent's visitation rights, the trial court considers the distance involved in the proposed new change of residence and the "hardships and expense" involved for the non-custodial parent in exercising his or her visitation. Ind.Code § 31–17–2–23(b). The Indiana Code imposes no burden of proof on the party intending to relocate, and was not enacted to punish parents who move. *Swonder v. Swonder,* 642 N.E.2d 1376, 1380 (Ind.Ct.App.1994). The notice of intent to relocate statute must be construed in conjunction with the child custody modification statute. *Id.*

■■■ The record reveals that after Mother tendered notice to Father that she intended to move to Illinois, Father filed with the trial court a petition for modification of custody. Following a hearing, the trial court awarded Father "temporary" custody of the two children. The memorandum accompanying the trial court's order provides in pertinent part that:

a. [Mother] is a superior parent. She reflects much more as a loving, caring and nurturing parent who displays a great deal more insight into the emotional and psychological needs of these children than does [Father]. . . .

b. It takes a village to raise a child. More than [Mother's] parenting skill is required to provide for the best interest of the children. Excellent extended family support from both the maternal and paternal grandparents as well as other family members exists for both [the children] and 100% of that support is available in the Miami and Fulton County area. These children are remarkably more isolated by the move to Illinois. Without expressing any quotes from the children, the Court simply notes that they are unhappy about it.

c. [Mother's] emotional life is unsettled. Frankly, the Court applauds her efforts to be upwardly mobile economically and her efforts at job improvement count to her advantage as a role model. It has resulted in the children's isolation, however, as noted above, and it has resulted in a temporary housing (these two children, ages 7 and 6 and of opposite sexes, sleep in the same bedroom in twin beds) so that changes are afoot in [Mother's] house. . . . The uprooting of the children by the sudden move, the predictable future move, and the resolution of the path of [Mother's] life is unsettling upon the children.

d. [Mother's] move was motivated by numerous factors, but among them was a desire to be rid of [Father's] contact and influence on her; while she values it for the children, she dislikes the effects on her. While more proper motivations for the move do exist, this improper one (improper because of the effect on visitation) is a concern.

R. 57–58. It is apparent from the record that the trial court awarded "temporary" custody of the children to Father primarily because of the consequences of the move on the children. Absent Mother's intended move to Illinois, we have no doubt that the trial court would have continued sole

physical custody of the children with Mother. The memorandum provides clear evidence that the trial court considered Mother to have better parenting skills than Father and more ability to attend to their emotional needs. Furthermore, the memorandum indicates that the trial court did not believe that it was "in the best interest of the children" to move to Illinois because the children needed the support of their extended family located in Miami and Fulton County, Indiana. Therefore, we believe that the trial court did not abuse its discretion in awarding Father "temporary" custody of the children in lieu of Mother's intended move to Illinois with the children which would result in a substantial change to the children's physical environment, relationships with extended family, and emotional well being.

We note that the trial court provided in its memorandum that the November 14, 2000, order awarding Father custody of the children was temporary, and would not become permanent unless Mother refused to relocate to Miami or Fulton County within six months. The memorandum provides in pertinent part that:

> The Court will leave this Order in place as a temporary order for six months to determine whether [Mother] intends to return to this area where the children receive their best support. If she does, the Court anticipates prompt restoration of custody to her with adjustments to the support order to be made as promptly as the legal machinery will allow. If she does not, without further showings, the Court would anticipate making this custody order permanent.

R. 58. Essentially, the order was a temporary measure to maintain the well being of the children until Mother decided if her move to Illinois was permanent. If not, the court clearly viewed it in the "best interest of the children" for Mother to have sole physical custody of the children.

We emphasize that a different situation would exist if Mother had not relocated to Miami County so soon after the trial court awarded "temporary" custody of the children to Father. However, in the present case, a mere fifteen days elapsed from the date of the trial court's order awarding "temporary" custody to Father to the date of Mother's motion seeking restoration of custody based upon her relocation to Miami County. The filing of Mother's motion for restoration of custody was clearly within the six month limit of the trial court's order awarding Father "temporary" custody of the children. Therefore, we hold that the trial court properly awarded Father "temporary" custody of the two children in light of Mother's decision to move out of state with the children.

## II. Father's Cross–Appeal

On cross-appeal, Father contends that the trial court erred in summarily awarding Mother custody of the two children based upon her relocation to Miami County. We disagree.

Because child custody proceedings implicate the fundamental relationship between parent and child, Indiana courts recognize that procedural due process must be provided to protect the substantive rights of the parties. *See Hayden v. Hite,* 437 N.E.2d 133, 136 (Ind.App.1982); *Brown v. Brown,* 463 N.E.2d 310, 313 (Ind. Ct.App.1984). Father essentially argues that the court's order dated November 14, 2000, which allowed a subsequent change of custody without a hearing violated his procedural due process rights.

Here, the trial court's November 14, 2000, order provides that it would award custody of the two children to Mother, without conducting a hearing, upon her relocation to Miami or Fulton County.

*See* R. 56. However, the children did not automatically revert to the care of Mother upon her relocation to Miami County. On November 28, 2000, she filed a motion for restoration of custody with the trial court providing that she had relocated back to Miami County. *See* R. 68. Thus, Mother formally notified the trial court that she had relocated and did not merely show up at Father's doorstep and demand custody of the two children.

Based upon the earlier hearing on the petition for modification of custody, the trial court had recent and sufficient information to rule on Mother's motion for restoration of custody. Furthermore, the trial court indicated in its memorandum that it would restore custody of the children to Mother if she relocated to Miami or Fulton County within six months. We believe that an additional hearing would be cumulative and unnecessary based upon the short span of time between the trial court's order awarding Father "temporary" custody of the children and Mother's relocation to Miami County. Therefore, based upon the facts and circumstances of this case, we hold that the trial court did not err in transferring custody to Mother without conducting a hearing.

### Conclusion

Based on the foregoing, we hold that the trial court properly awarded "temporary" custody of the children to Father in light of Mother's intended move out of the state of Indiana with the children. In addition, we hold that the trial court properly relied solely upon Father's income from Essoc Cement in calculating his weekly gross income for purposes of child support. With regard to Father's cross-appeal, we hold that based on the facts and circumstances, the trial court properly transferred custody of the two children to Mother without conducting a hearing.

Affirmed.

BROOK, J., and VAIDIK, J., concur.