In re the Marriage of Carole A. FISTE, Appellant–Respondent,

v.

Roger R. FISTE, Appellee–Petitioner.

No. 32A01–9307–CV–228.

Court of Appeals of Indiana, First District.

Feb. 2, 1994.

---

Gloria K. Grinnan, Indianapolis, for appellant-respondent.

Thomas J. O'Brien, Deckard & O'Brien, Danville, for appellee-petitioner.

ROBERTSON, Judge.

Carole A. Fiste appeals from a decree of dissolution, challenging the apportionment of college expenses; the amount of child support she has been ordered to pay Roger and the court's failure to abate child support while the son is at school; the exclusion from the marital pot of Roger's contingent remainder interest in real estate; the credit given Roger for household bills paid during the parties' separation; and, the trial court's decision to divide the marital property equally between the parties. Roger Fiste cross-appeals, arguing that he was entitled to a credit for child support paid to Carole while divorce proceedings were pending and the minor child was in her physical custody but a full-time college student living on campus; and, for college expenses paid during that same period. We affirm in part and reverse in part.

*Apportionment of College Expenses*

The trial court apportioned all of the minor son's college expenses, including tuition, room and board, and books, by ordering the son to pay one-third of his expenses, Carole Fiste to pay one-third of the son's expenses, and Roger Fiste to pay one-third of the son's expenses commencing with the 1993–94 college year. However, applying the child support guidelines to the evidence, the trial court also found that Carole's income was twenty-two percent (22%) of the gross total of both incomes and Roger's income amounted to seventy-eight percent (78%) of the gross total income. This finding is supported by the evidence of record. Accordingly, Carole argues that her proportionate share of the son's college expenses should be reduced to around 22%. Roger argues that we should consider all of the facts and evidence before the trial court, taking into account the fact that the minor son is unable to pay his one-third share, and hence, as a practical matter, Roger will effectively be paying two-thirds of the total college expense.

"[W]hen the apportionment of college expenses is at issue, the clearly erroneous standard articulated in *Humphrey* governs appellate review." *Carr v. Carr* (1992), Ind., 600 N.E.2d 943, 945. "[W]e will affirm the trial court unless the decision is clearly against the logic and effect of the facts and circumstances which were before it. *Matter of Paternity of Humphrey* [ (1991), Ind.], 583 N.E.2d [133] at 134." *Carr*, 600 N.E.2d at 945. But see *Humphrey*, 583 N.E.2d at 134 (citing *In re Marriage of Davidson* (1989), Ind.App., 540 N.E.2d 641, 645 which adopts abuse of discretion standard from *Chestnut v. Chestnut* (1986), Ind.App., 499 N.E.2d 783, 786 and *Taylor v. Taylor* (1982), Ind., 436 N.E.2d 56, 58). Absent an evidentiary justification in the record and a finding by the trial court that a proportional distribution would be unfair, the child support guidelines require rough proportionality. *Carr*, 600 N.E.2d at 946. Trial court discretion to tailor a child support award to the circumstances must be exercised in a way consistent with the guidelines. *Id.* at 946 n. 3.

The trial court made no finding that a proportional allocation of the college expenses would be unfair. Moreover, the record would not support such a finding. The evidence before the court established that Carole, who had very little education, earned approximately $12,000 per year while Roger

earned around $50,000. The son had chosen to attend a private school with yearly costs in the neighborhood of $18,000. In the first year, approximately $7,000.00 of the total expense had been offset by scholarships and grants, some of which were expected to continue in the future. When the extraordinary expense of a private college education is properly considered in light of the analytical model adopted by the guidelines, Ind.Child Support Guideline 3(E)(3), *Carr, id.*, the trial court's deviation from the proportionality intended by the guidelines is not insubstantial. In the absence of a finding and evidence justifying a deviation from the guidelines, we conclude that the trial court abused its discretion in ordering Carole to pay one-third of all college expenses.

*Amount and Abatement of Child Support*

■ The court calculated the amount of Carole's support based upon a verified statement of the amount of her income made on a guideline worksheet. However, at trial, Carole submitted a revised worksheet and offered her testimony to establish the cost of maintaining a health insurance policy on the son. The parties testified and appeared to be in agreement that Carole's employment provided the opportunity for the most comprehensive policy. The wife testified that the cost to her to maintain insurance on the son was approximately $18.00, which when used to reduce her gross income as permitted by the guidelines, would cause the amount of support to be ordered to drop from $39.00 per week to $36.00 per week.

Although the guidelines contemplate that health care coverage be considered in determining a support order, Ind.Child Support Guideline 3(C)(3) permits but does not require that the cost of coverage be deducted from weekly gross income. Moreover, the commentary to subsection 3 warns that "it may be necessary for the obligor to contact his or her employer to obtain appropriate documentation of the additional cost for the [child's] coverage before a deduction is computed." The wife offered no documentation to establish the proportion of her health insurance costs which were attributable to the son. Accordingly, we conclude it was in the court's discretion to adopt her original calculation under the guidelines.

■ However, we must agree with Carole that the order of support should be abated at least in part while the son is living on campus. The commentary to Ind.Child Supp.G. 3(E)(3) recognizes that duplication in living expenses may occur when education expenses are included in a separate order and consequently, support paid to the custodial parent should be reduced or eliminated, at least while the student is away from the household and at school. *In re the Marriage of Tearman* (1993), Ind.App., 617 N.E.2d 974, 977, and *Reeves v. Reeves* (1992), Ind.App., 584 N.E.2d 589, *trans. denied,* so hold. See also *Carr,* 600 N.E.2d at 946 ( [T]he commentary encourages the avoidance of duplicative support and college expense orders). The record reflects that the trial court abated the provisional support order of Roger during the pendency of the proceedings 100% without accepting any evidence of the costs of maintaining the son during the periods when he was at home. At the final hearing, however, Roger testified that the son came home every weekend and that there were costs incurred from the additional food consumed. In addition, Carole testified that she used support payments made by Roger to pay for clothing and groceries for her son, his car insurance, and maintaining his dog while the son was at school. Presumably, similar types of expenses will occur in the future. We leave it to the trial court to consider on remand this and the other evidence of record and to determine the appropriate amount of abatement.

*Exclusion of Husband's Remainder Interest in Real Estate*

In distributing the parties' marital property, the trial court excluded from consideration and distribution a future interest Roger possesses by virtue of the will of his grandfather. Roger's grandfather devised the real estate, presently valued at approximately $350,000.00, first to his wife for life, then to their daughter, Roger's mother, for life and then to "her child or children, share and share alike, and to their heirs, per stirpes and not per capita, to have and to hold as

their property absolutely and forever." Carole insists that the trial court erred in excluding Roger's interest from the marital pot.

■ The parties argue over whether or not Roger's remainder interest should be characterized as vested or contingent but the Indiana Supreme Court held in *Loeb v. Loeb* (1973), 261 Ind. 193, 301 N.E.2d 349, that characterization of the interest was not critical to the determination of whether or not it was part of the marital estate. *Loeb*, who possessed only a future interest in property transferred into a trust by the life tenant, (specifically, a vested remainder subject to condition subsequent, i.e. complete disfeasance should he predecease the settlor), had no present interest of possessory value and his future interest was held to be too remote to be included in the property settlement.

Subsequent to the Supreme Court's decision in *Loeb*, the legislature added a definition of property for purposes of the dissolution statutes which expressly states that all "assets" of the parties are property.[1] Nonetheless, some interests in property are still considered too remote to be assets capable of division. *See, e.g., Kirkman v. Kirkman* (1990), Ind., 555 N.E.2d 1293 (Pension, which would not "vest" as "defined in Section 411 of the Internal Revenue Code" for one and one-half years after decree and could be forfeited upon termination of employment, properly excluded from property division). Inasmuch as Roger does not possess "a present interest of possessory value" and, like the future interest possessed by Loeb, Roger's interest is subject to complete disfeasance if he should predecease his mother, we agree with the trial court that under *Loeb*, Roger's interest is too remote to constitute marital property. The trial court did not err in excluding Roger's remainder interest in real estate.

### Credit for Household Expenses Pending Dissolution

■ As Carole acknowledges, *Herron v. Herron* (1983), Ind.App., 457 N.E.2d 564, holds that it is not improper or an abuse of discretion, in dividing the marital property, to consider temporary maintenance paid by one spouse under a provisional order. Indiana Code 31–1–11.5–7(f) continues to provide that the issuance of a provisional order shall be without prejudice to the rights of the parties as adjudicated at the final hearing in the proceeding. Hence, the rationale of *Herron* remains valid. The husband agreed provisionally to pay for Carole to remain in the marital residence for a period of several months while the proceedings were pending. The agreement gave Carole some time to make other living arrangements. It is not unjust or unreasonable to credit Roger for amounts he expended in maintaining Carole during the pendency of the proceedings.

### Equal Division

■ The trial court determined that an equal division of the property would be just and reasonable, apparently finding that the evidence of disparate earning capacity did not rebut the statutory presumption. The wife presented evidence tending to show that she had contributed to the acquisition of the property by maintaining the household and caring for the children while Roger worked. Roger received a small inheritance during the twenty-seven year marriage and neither party dissipated or disposed of assets during the marriage. There seemed to be no dispute that Roger had a superior earning capacity and generally better economic circumstances at the time of the disposition of the property, although Carole had made arrangements to live rent free but share utilities.

■ While these facts might support a different distribution, our focus is on what the trial court did, not on what it could have done. The trial court's discretion in the disposition of marital property is subject to the statutory presumption for equal distribution. *Norton v. Norton* (1991), Ind.App., 573 N.E.2d 941, 943. The statutory presumption must be followed absent evidence that an equal division would not be just and reasonable. *Kirkman*, 555 N.E.2d at 1294. The purpose of the statutory presumption is to

---

1. The definition now specifically identifies three types of property interests which are included within the scope of the chapter, I.C. 31–1–11.5–

2; none of those explicitly identified interests are at issue in the present case.

move away from outdated notions about the contributions of each party to the marriage, and to treat the marriage more like a partnership in which the parties are presumed to share equally in the profits. *Norton*, 573 N.E.2d at 943.

▉ The party challenging the trial court's property division must overcome a strong presumption that the court complied with the statute and considered the evidence on each of the statutory factors. *DeHaan v. DeHaan* (1991), Ind.App., 572 N.E.2d 1315, 1325, *trans. denied; Porter v. Porter* (1988), Ind.App., 526 N.E.2d 219, 222, *trans. denied.* We will find the trial court abused its discretion only where the result reached is clearly against the logic and effect of the facts and circumstances before the court, including the reasonable inferences to be drawn therefrom. *Id.* The fact that the same circumstances would justify a different award does not permit us to substitute our judgment for that of the trial court. *DeHaan*, 572 N.E.2d at 1325.

An equal division of property does not constitute an abuse of discretion in this case. *Cf. Euler v. Euler* (1989), Ind.App., 537 N.E.2d 554.

### Credit for Child Support and Educational Expenses

Roger maintains that the trial court abused its discretion in denying him a credit for child support paid from August 8, 1992, through February 22, 1993, or a total of 26 weeks while the minor son was attending his first year of college, and for sums expended for the son's first year of school. The trial court denied Roger any credit "because there were no specific outstanding orders to pay joint expenses of that nature." The record reflects that there was a provisional order, which incorporated the parties' agreement, that Roger would pay support at the rate of $136.00 per week and pay the son's expenses in applying to colleges. We have not discovered any order requiring Roger to pay the first-year college expenses. Roger did not seek a modification of the provisional order until February 22, 1993, the date of the first property distribution hearing.

An order for child support, established as part of a dissolution action, is intended to provide for the support and maintenance of the parties' minor children. *Whitman v. Whitman* (1980), Ind.App., 405 N.E.2d 608, 611. It is the settled law of this state that the noncustodial parent is required to make support payments in the manner, amount and at the times required by the support order, at least until the order is prospectively modified or set aside. *Id.* (citing *Stitle v. Stitle* (1964), 245 Ind. 168, 197 N.E.2d 174). The reason for the rule is to provide certainty. "Both parties know that if circumstances change, or any question arises concerning the use of the support funds, or the necessity of the payment that the available remedy is through judicial review—as soon as possible." *Whitman*, 405 N.E.2d at 613.

▉ Hence, an obligated parent will not be allowed credit for payments not conforming to the support order. *O'Neil v. O'Neil* (1989), Ind., 535 N.E.2d 523, 524. Any excess even under a contrary agreement between the parties must be viewed as a gratuity or as a voluntary contribution for the support of the children. *Jenkins v. Jenkins* (1991), Ind.App., 567 N.E.2d 136, 139; *In re the Marriage of Bradach* (1981), Ind. App., 422 N.E.2d 342, 353. But for a few narrow exceptions, sums voluntarily paid for a child's educational costs do not entitle the noncustodial parent to a credit. *O'Neil*, 535 N.E.2d at 524. A debt in a property settlement may not be satisfied from an overpayment of child support. *Jenkins*, 567 N.E.2d at 140. Holding child support distinct from other accounts protects the child's right to receive support. *Id.*

▉ The evidence reflects that the father's overpayment of support accrued only to the benefit of the minor son as Carole put the money into a bank account and used it to pay for expenses incurred by the minor son. Moreover, as we indicated above, the trial court's decision to credit Roger 100% for sums expended provisionally to maintain the family residence while the dissolution was pending means that Carole effectively maintained the family residence during this period by reducing her net worth. She therefore was not in any way benefitted by Roger's

overpayment of support. The trial court properly denied Roger a credit against the marital assets for his overpayment of child support and educational expenses.

Judgment affirmed in part, reversed in part and remanded.

NAJAM and FRIEDLANDER, JJ., concur.