**In re the Marriage of Edwina (Lawmaster) GLICK, Appellant–Petitioner,**

v.

**Larry G. LAWMASTER, Appellee– Respondent.**

No. 49A05–9311–CV–416.

Court of Appeals of Indiana, Fifth District.

March 17, 1995.

Sheila M. Flynn, Treacy Grossman & Sulli-van, Indianapolis, for appellant.

Richard A. Clem, Alden & Clem, Indianap-olis, for appellee.

## OPINION

SHARPNACK, Chief Judge.

Edwina Glick appeals the trial court's or-der denying her motion for contempt citation,

which she had filed against her ex-husband, Larry G. Lawmaster, and denying in part and granting in part her petition for modification of the parties' child support obligations. We affirm.

Glick raises four issues for our review, which we renumber and restate as:

1. whether the trial court abused its discretion in denying Glick's motion for contempt citation;

2. whether the trial court's allocation of the children's college expenses was clearly erroneous;

3. whether the trial court's order that part of Lawmaster's child support obligation be escrowed for use toward his share of the college expenses was clearly erroneous; and,

4. whether the trial court abused its discretion in denying Glick's request for attorney fees.

Glick and Lawmaster were divorced on February 5, 1979. Glick was awarded sole custody of their three children and Lawmaster was ordered to pay weekly child support. On February 18, 1992, the parties entered into an agreed entry which provided:

"3. The Decree is modified as to the allocation of reasonable uninsured medical costs. Wife shall pay the first 6% of child support towards uninsured costs and thereafter, these expenses shall be apportioned according to the parties' income, husband shall pay 67% and wife shall pay 33%."

Record, p. 8.

On February 8, 1993, Glick filed a motion for contempt citation in which she alleged that Lawmaster had not complied with the terms of the agreed entry because he had not paid his portion of uninsured orthodontia expenses for one of the parties' two sons. Glick prayed that Lawmaster be held in contempt and that he be ordered to pay her attorney fees for the contempt citation.

On February 18, 1993, Glick filed a petition for modification in which she alleged that a substantial change in circumstances made the court's previous order unreasonable. Her petition reads, in pertinent part, as follows:

"3. With regard to child support and uninsured health expenses, Mother is no longer employed and believes that there will be a twenty percent (20%) change in child support imputing minimum wage to Mother. Mother believes that her change in income limits her ability to pay uninsured medical expenses, including dental, orthodontic, optical and other related medical expenses.

4. The parties' two sons, . . . both seniors in high school, will be entering post-secondary educational institutions away from Mother's home in the academic year 1993–1994. Mother shall apply and assist the parties' sons in obtaining any available financial aid but believes that there will be extraordinary educational expenses that will be unmet by said aid.

5. Mother is without sufficient funds to pay her attorney."

Record, pp. 13–14.

On April 16, 1993, Glick filed her motion for findings of fact and conclusions thereon pursuant to Ind. Trial Rule 52(A) and the court conducted a hearing. Because no transcript of the hearing was made, the record before us includes a written statement of evidence prepared pursuant to Ind. Appellate Rule 7.2(A)(3)(c). On May 13, 1993, the court issued its order denying Glick's motion for contempt citation, denying her petition for modification with respect to weekly child support and uninsured medical expenses, and granting her petition for modification with respect to college expenses. On June 9, 1993, Glick filed a motion to correct error, which the trial court granted in part and denied in part. Glick then initiated this appeal. Additional facts will be provided as required for the resolution of the issues presented.

On appeal from a trial court's determination or modification of child support, we will affirm the trial court's order unless it is clearly erroneous. *Marmaduke v. Marmaduke* (1994), Ind.App., 640 N.E.2d 441, 443.

"Clearly erroneous means that, although there is evidence to support the trial court's decision, the record leaves the reviewing court with the firm conviction that

a mistake has been committed. *Cox v. Cox* (1991), Ind.App., 580 N.E.2d 344, 348, *trans. denied.* A trial court's factual findings will not be found to be clearly erroneous unless the evidence contains no facts or reasonable inferences supporting the findings."

*Marmaduke*, 640 N.E.2d at 443, n. 1.

## I

■ The first issue raised for our review is whether the trial court abused its discretion in denying Glick's motion for contempt citation. We will reverse the trial court's ruling "only upon a showing of an abuse of discretion in the trial court's determination that [Lawmaster] did not willfully disobey the support order." *Kirchoff v. Kirchoff* (1993), Ind.App., 619 N.E.2d 592, 596.

■ Glick contends that the trial court erred in finding that no evidence was presented showing that the divorce decree, as amended, required Lawmaster to contribute toward dental or orthodontia expenses. Glick argues that the trial court erred because the subject orthodontia expenses constitute "medical costs."

At the hearing, Glick testified that she believes that dental expenses are medical expenses. Lawmaster testified that he does not believe that he has a duty to pay orthodontia expenses and that in his opinion the trial court's order only covers medical expenses and not dental expenses. Upon our review of the pertinent statutes and Child Support Guidelines, we conclude that orthodontia expenses are not medical expenses unless specified as such in the support order.

Indiana Code § 31–1–11.5–12 provides, in pertinent part:

"(a) In an action pursuant to ... [IC 31–1–11.5–3(a), IC 31–1–11.5–3(b), or IC 31–1–11.5–3(c) ] ..., the court may order either parent or both parents to pay any amount reasonable for support of a child, without regard to marital misconduct, ....

(b) The child support order may also include, where appropriate:

(1) Sums for the child's education in elementary and secondary schools and at institutions of higher learning, taking into account the child's aptitude and ability and the ability of the parent or parents to meet these expenses;

(2) *Special medical, hospital, or dental expenses* necessary to serve the best interests of the child; and

(3) Fees mandated under Title IV–D of the federal Social Security Act."

I.C. § 31–1–11.5–12(a) & (b) (emphasis added). Thus, under the statute, a support order may include a provision for the payment of either medical expenses or dental expenses, or both.

Glick argues that the Guidelines use the terms "health care expenses" and "medical expenses" interchangeably. For example, Ind. Child Support Guideline 3(E)2 provides that "[o]rdinary uninsured medical expenses should be paid by the custodial parent up to six percent (6%) of the basic child support obligation ... since that obligation as well as the figures found in the Guideline Schedules for Weekly Support Payments include six percent (6%) for ordinary uninsured health care costs." Child Supp. G. 3(E)2. As noted by Lawmaster, however, the Commentary clarifies that there are a number of components to "health care expenses," including "medical" and "dental."

"*Treatment of Ordinary Health Care Expense; Not an Adjustment.* It has been the practice in many courts to apportion between the parents *the medical, dental and optical expenses that exceed insurance,* usually on an equal basis. The data on which the Guideline schedules are based included a component for ordinary medical expenses. Specifically, 6% (six percent) of the support amount is for health care expense. The noncustodial parent is, in effect, prepaying health care expenses every time a support payment is made....

After the custodial parent's obligation for ordinary uninsured health care expenses is computed, some provision should be made for uninsured health care expenses that may exceed that amount....

Two practical suggestions are offered. First, spell out with specificity in the order what expenses are covered. For example, *the order may include any reasonable*

*medical, dental, hospital, optical, pharmaceutical and psychological expenses deemed necessary for the health and welfare of the child(ren). If it is intended that aspirin, vitamins and bandaids be covered, the order should state specifically that such non-prescription health care items are covered....*"

Commentary, Child Supp. G. 3(E)2(b) (emphasis added). Based on the Commentary, we are unpersuaded by Glick's contention that treating orthodontia expenses as distinct from medical expenses is contrary to the Guidelines.

In addition, giving the terms at issue their plain and ordinary meaning leads to the conclusion that orthodontia expenses are not medical expenses. "Medical" is commonly defined as "[o]f or pertaining to the study or practice of medicine," i.e., "[t]he science of diagnosing, treating, or preventing disease and other damage to the body or mind." The American Heritage Dictionary of the English Language (1981). "Dental" is commonly defined as "[o]f, pertaining to, or for the teeth," and "dentistry" defined as "[t]he diagnosis, prevention, and treatment of diseases of the teeth and related structures, including the repair or replacement of defective teeth." *Id.* "Orthodontia" is "[t]he dental specialty and practice of correcting abnormally aligned or positioned teeth." *Id.*

We find that orthodontia expenses are a form of dental expense and are distinct from medical expenses under Indiana law.[1] *See Rohn v. Thuma* (1980), Ind.App., 408 N.E.2d 578, 583 (treating uninsured orthodontia expenses as extraordinary dental expenses); *but cf. Linton v. Linton* (1975), 166 Ind.App. 409, 336 N.E.2d 687, 696 (holding that evidence concerning child's need for orthodontia work was properly admitted in contempt proceeding where provision for medical care and support were included in the original divorce decree), *reh'g denied.*

Having concluded that orthodontia expenses are not medical expenses unless specified as such in the subject support order, we find no error in the trial court's determination that Lawmaster was not in willful noncompliance with the terms of the agreed entry when he refused to contribute to uninsured orthodontia expenses.

II

The next issue raised for our review is whether the trial court's allocation of the children's college expenses was clearly erroneous.

■ A child support order may include an order for the payment of higher education expenses. I.C. § 31–1–11.5–12(b), *supra;* Child Supp. G. 3(E)3. When a party challenges the trial court's order for the payment of extraordinary educational expenses, appellate review is for abuse of discretion. *Carr v. Carr* (1992), Ind., 600 N.E.2d 943, 945. Where, however, as here, the issue is the trial court's apportionment of such college expenses, we apply the clearly erroneous standard. *Id.* "We will affirm the trial court unless the decision is clearly against the logic and effect of the facts and circumstances which were before it." *Id.*

In the present case, the trial court found that Glick voluntarily terminated her employment within the last year and had imputed income of $312.00 per week. The trial court found that Lawmaster's income at the time of the hearing was $709.00 per week with a health insurance cost of $38.50 per week, and that Lawmaster was "in a unique position regarding his employment in that he has been notified that his job will be terminated in September of 1993." Record, p. 49. The trial court further found that the parties' two sons each would be commencing their college education in the 1993–1994 school year, for a combined first-year cost of $12,970.00 plus books after the deduction of a scholarship awarded to one of the sons. The trial court

---

1. In an exceptional case, certain orthodontia procedures might be *medically* necessary. No evidence of such a circumstance was presented here. In the majority of cases we would agree with our supreme court's observation that orthodontia expenses are in the same class as "[t]he expenses of college ... music lessons, summer camp, and various other optional undertakings within the discretion of married parents but subject to compulsory payment by inclusion in a child support order in the event of dissolution." *Neudecker v. Neudecker* (1991), Ind., 577 N.E.2d 960, 962.

then allocated the college expenses as follows:

"18. That each party, as well as the minor children, should be responsible for a portion of their post-secondary expenses. That based upon the evidence presented, [Lawmaster's] uncertain job future, the attributable income to [Glick], the Court finds that [Lawmaster] shall be responsible for sixty percent (60%) of the net college expenses incurred by each child, and [Glick] shall be responsible for forty percent (40%) of the net college expenses incurred by each child. 'Net college expenses' shall mean the total of room, board, tuition, books, and laboratory fees, less all scholarships, grants in aid, and other non-reimbursable benefits. In addition, 'net college expenses' shall also include an obligation by each child to provide at least One Thousand Dollars ($1,000.00) per semester, to be applied toward said expenses, said monies to be provided by each child either out of their own funds, or by obtaining loans."

Record, p. 51.

■ On appeal, Glick contends that the trial court's apportionment of 40% of the college expenses to her was clearly erroneous. She contends that the trial court's 60%/40% apportionment is not consistent with the income shares model of the Guidelines [2] and that the trial court "failed to state any reason why following the guideline apportionment would be unfair" as required by case law. Appellant's brief, p. 10. Lawmaster argues that the trial court's apportionment should be affirmed because it meets the requirement of "rough proportionality" and because there is a basis for deviation clearly stated in the trial court's findings. With regard to the latter point, we agree with Lawmaster.

In support of her position, Glick cites *Carr*, *supra*, and *Fiste v. Fiste* (1994), Ind.App., 627 N.E.2d 1368. In *Carr*, our supreme court granted a father's petition for transfer

and held that the trial court's apportionment of college expenses "between the parents in a way disproportionate to their resources" was clearly erroneous. 600 N.E.2d at 944. The court wrote:

"A defining feature of the guidelines and Ind.Code § 31–1–11.5–12 is the premise that children should receive the same proportion of parental income after a dissolution as they would have received had the family remained intact. This premise has been effectuated through the adoption of the 'income shares model' whereby child support obligations are prorated between the parents, based on their proportionate share of income. Guideline 1, Commentary. Absent a finding by the trial court that such a disposition would be unfair, we would expect this result to obtain in orders decreeing the payment of college expenses."

*Carr*, 600 N.E.2d at 946 (footnote omitted). Thus, where the guidelines would have provided roughly a 60%/40% split of the college expenses based on the parties' income, it was clearly erroneous for the court to order that 80% of the college expenses be paid by the father absent some justification for the deviation in the record or the order. *Id.*

In *Fiste*, *supra*, the mother's income represented 22% and the father's income represented 78% of the gross total of both incomes. 627 N.E.2d at 1370. The mother appealed from the trial court's allocation of college expenses one-third to the mother, one-third to the father, and one-third to the son. *Id.* This court found that with first-year education costs of approximately $11,000 remaining after the deduction of scholarships and grants, "the trial court's deviation from the proportionality intended by the guidelines is not insubstantial." *Id.* at 1371. Accordingly, this court held that the trial court abused its discretion in ordering the mother to pay one-third of the college expenses "[i]n the absence of a finding and

2. Glick contends that Lawmaster had 70% of the parties' combined income and she had 30% of the parties' combined income, therefore the trial court should have ordered a 70%/30% split of the college expenses at issue. Lawmaster, on the other hand, contends that he had 68% and Glick

had 32% of the parties' combined income. Although we have utilized Lawmaster's figures in our discussion of this issue, the 2% discrepancy in the parties' calculations is not determinative of our resolution of this issue.

evidence justifying a deviation from the guidelines." *Id.*

In the present case, in light of the significant education costs involved, we agree with Glick that the trial court's 8% deviation from the proportional amounts provided by the Guidelines was not insubstantial. *Fiste, supra.* We affirm the trial court and distinguish both *Carr* and *Fiste*, however, because the evidence and the trial court's order each reveal a justification for deviating from the guideline amount: the elimination of Lawmaster's job. *Cf. Carr, supra,* 600 N.E.2d at 945 (wherein the mother predicted a drop in income due to the loss of the salaried portion of her commission/salary compensation).

Lawmaster presented a letter from the Vice President of Personnel at Indiana National Bank which stated: "Due to the merger with NBD Bank, the Data Processing function at INB will be significantly reduced. As a result, Larry Lawmaster's position will be eliminated during the fourth quarter of 1993." Record, p. 124. Thus, contrary to Glick's contention, the loss of Lawmaster's job was not uncertain. Evidence was presented and the trial court made findings on the difficulty Lawmaster would encounter in finding a comparable position at the same income level, and the findings reveal that trial court took Lawmaster's severance pay into account in reaching its decision. Finally, the trial court properly considered cost reducing measures and the prospect of the sons contributing to the costs of their respective educations.

The trial court's order did not use the word "unfair," but this should not be controlling. *See Boruff v. Boruff* (1992), Ind.App., 602 N.E.2d 180, 182 (although trial court must articulate a sufficient basis for deviating from Guidelines, its findings need not be especially formal). The trial court's order justified deviation from the Guidelines based on the pending loss of Lawmaster's job. Accordingly, we hold that the trial court's 8% deviation was not clearly erroneous.

### III

■ The next issue raised for our review is whether the trial court erred in ordering that part of Lawmaster's child support obligation be escrowed for a three month period for use toward his share of the college expenses.

The court's order included the following provision:

"19. That due to the fact that [Lawmaster] knows that he will be losing his employment, and his job future is uncertain, the Court hereby provides that between the date of this Entry [May 13, 1993] and August 15, 1993, Forty-seven Dollars ($47.00) per week of [Lawmaster's] child support obligation shall be escrowed to be applied towards [Lawmaster's] portion of college expenses. That in addition, [Lawmaster's] child support obligation shall abate during any calendar week in which either child is at school at least four (4) days."

Record, p. 52.

Glick contends that the trial court's order was clearly erroneous because the trial court's findings, specifically finding nos. 13, 15, and 19 are unsupported by the evidence. Glick argues further that even if these three findings are supported by the evidence, the trial court's findings do not support the trial court's judgment. Lawmaster responds that the findings are amply supported by the evidence and supply a logical and legitimate basis for the trial court's order.

Glick contends first that finding no. 13 is not supported by the evidence because the trial court found that Lawmaster was in a "unique" position "and then goes on to find that hundreds of people have found themselves in the same position as [Lawmaster], which is inconsistent." Appellant's brief, p. 8. We do not agree. Lawmaster presented evidence that his position would be eliminated in the fourth quarter of 1993. Although Lawmaster testified that it was more likely than not that he would find another position, he also testified that many programmer analysts had left other local banks due to takeovers by outside entities and that most of those former INB employees who had found other positions were making significantly less money. Lawmaster also testified that some of INB's former employees had been unable to find any replacement employment. The

evidence supports finding no. 13 and, although Glick takes issue with the trial court's use of the term "unique," we find no error. The court was noting that Lawmaster was not merely losing his position; he would be searching for replacement work when hundreds of other employees in the same industry and the same market also were looking for new positions.

Glick argues that finding no. 15 is not supported by the evidence because it "inaccurately describes [Lawmaster's] chances of finding a job (which assumes that he would lose his job, a fact which was not in existence) as 'remote,'" and because Lawmaster testified that it was more likely than not that he would find another position. Appellant's brief, p. 8. The trial court did not find that Lawmaster's chances of finding *any* job were remote; instead, the court found that "based upon information which [Lawmaster] has received from other employees who have already been terminated, the likelihood of finding reemployment, *in the same career field, at the same income level,* is remote." Record, p. 50 (emphasis added). Based on the evidence already described above, we conclude that finding no. 15 was supported by the evidence and the reasonable inferences to be drawn therefrom.

With regard to finding no. 19, Glick contends that the evidence most favorable to that finding "is [Lawmaster's] claim that he believed he would lose his job at the end of 1993, at which time he would receive a six month severance pay package. . . ." Appellant's brief, p. 9. Glick again invites us to characterize the prospect of Lawmaster's job-loss as speculative. Lawmaster presented evidence showing that his position was being eliminated and the trial court found this evidence to be credible. The trial court's finding no. 19 is supported by the evidence.

■ We turn next to Glick's contention that the trial court's findings do not support its order that for the three-month period between the date of the court's entry and August 15, 1993, $47.00 per week of Lawmaster's child support obligation shall be escrowed for use toward Lawmaster's share of the college expenses. Glick argues that the trial court's order is a clearly erroneous *sua sponte* reduction in Lawmaster's support obligation. We disagree. We note first that the trial court's action was not *sua sponte,* as Glick contends. Lawmaster testified that he learned three days before the April 16, 1993, hearing that his sons both planned to attend college. Lawmaster requested an immediate reduction in his child support payments so that he could save for his portion of the college expenses in light of the fact that he knew his employment would be terminating.

As noted above, "[a] defining feature of the guidelines and Ind.Code § 31–1–11.5–12 is the premise that children should receive the same proportion of parental income after a dissolution as they would have received had the family remained intact. . . ." *Carr, supra,* 600 N.E.2d at 946. We believe the trial court's order is consistent with this standard given the short notice Lawmaster had of the children's educational needs and the timing of his loss of employment. In addition, a trial court may establish an escrow account to ensure the availability of funds for the children's college education. *See Schueneman v. Schueneman* (1992), Ind.App., 591 N.E.2d 603, 610 (affirming trial court's order setting aside $15,000 for college expenses from proceeds of lawsuit); *Griswold v. Savage* (1991), Ind.App., 569 N.E.2d 970, 972 (upholding trial court's order that father pay into escrow/security savings account funds in an amount of $4,500.00 for each of the four years the child would be in college), *trans. denied.* The trial court's order that a portion of Lawmaster's child support payment be escrowed for a three month period prior to the commencement of the 1993–1994 academic school year not only permitted Lawmaster to save toward his share of the college expenses as Glick argues, but also provided some assurance that the necessary funds would be available at the commencement of the school year. Finally, the court's order specifies the court's reasons for deviating from the Guidelines for the three month period at issue. *See Boruff, supra,* 602 N.E.2d at 182.

Glick has failed to convince us that the trial court's order is clearly erroneous.

## IV

The final issue raised for our review is whether the trial court abused its discretion in denying Glick's request for attorney fees. Glick contends that the trial court should have considered the parties' resources, their economic conditions, the ability of each to engage in gainful employment, and Lawmaster's conduct occasioning the need for the proceeding. Lawmaster notes that the trial court denied Glick's petition to modify regarding weekly child support payments and uninsured medical expenses and denied her petition for contempt citation. He argues that in light of his willingness to contribute to the children's college expenses and the court's rulings on that issue, it cannot be said that the trial court abused its discretion. We agree.

As this court has observed, pursuant to I.C. § 31–1–11.5–16,

> "the trial court *may* award attorney's fees at any stage of the dissolution proceeding. *Brown v. Brown* (1988), Ind.App., 519 N.E.2d 1259, 1262. (Emphasis in original).
>
> The statute affords the trial court broad discretion in assessing attorney's fees but does not mandate the trial court to assess attorney's fees in the first instance. *Id.* at 1262–63. There is no abuse of discretion for the trial court to not do that which it is not required to do. *Id.*"

*Rump v. Rump* (1988), Ind.App., 526 N.E.2d 1045, 1047, *trans. denied.*

Accordingly, we find no abuse of discretion in the trial court's order that each of the parties shall be responsible for their respective attorney's fees.

For all the foregoing reasons, the trial court is affirmed.

AFFIRMED.

RUCKER and DARDEN, JJ., concur.