## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Feb 16 2016, 9:08 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT

Preston T. Breunig
Martha L. Westbrook
Buck Berry Landau & Breunig, P.A.
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Angela B. Swenson
Swenson & Associates PC
Carmel, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Richard R. Hogshire,<br>*Appellant-Petitioner,*<br><br>v.<br><br>Ursula Hoover,<br>*Appellee-Respondent.* | February 16, 2016<br><br>Court of Appeals Case No.<br>06A01-1506-DR-676<br><br>Appeal from the Boone Circuit Court<br><br>The Honorable J. Jeffrey Edens, Judge<br><br>Trial Court Cause No.<br>06C01-1401-DR-7 |

**Najam, Judge.**

## Statement of the Case

[1] Richard R. Hogshire ("Husband") appeals the trial court's order awarding temporary maintenance to Ursula Hoover ("Wife"). Husband presents a single

issue for our review, namely, whether the trial court abused its discretion when it ordered him to pay Wife temporary maintenance in the amount of $523 per week, including in-kind payments.

[2] We affirm.

## Facts and Procedural History

[3] We previously set out the facts and procedural history in this case as follows:

> On January 5, 2012, Husband filed a petition to dissolve his fourteen-year marriage to Wife. In response, Wife filed a counter-petition for divorce on January 13, 2012. Husband and Wife, who are seventy-seven and seventy-five years old, respectively, do not have any children together. The lion's share of the marital assets consists of the marital residence in Indianapolis, Indiana, as well as several businesses in Husband's name.

> Following the parties' cross-petitions for dissolution, on April 30, 2012, the trial court conducted a provisional hearing and received evidence regarding the financial circumstances of both Husband and Wife. The next day, the trial court issued a provisional order (Provisional Order # 1), which awarded temporary possession of the marital residence to Husband. Provisional Order # 1 also required, in part, that Husband pay $300 per month to Wife in temporary maintenance and that he provide her with $5,000 in order to retain a business valuation expert.

> On October 9, 2012, Wife filed a petition for emergency relief and modification of Provisional Order # 1. On November 16, 2012, after a second provisional hearing, the trial court issued a modified provisional order (Provisional Order # 2), which extinguished Husband's obligation to make monthly maintenance payments. Instead, the trial court awarded Wife

temporary possession of the marital residence and ordered Husband to pay all of the expenses related thereto, including the mortgage payment. In addition to maintaining its initial order that Husband pay $5,000 for a business valuation expert, the trial court, acting sua sponte, also ordered Husband to pay $10,000 toward Wife's attorney fees. On November 21, 2012, Husband filed a motion for the trial court to reconsider its ruling, which the trial court denied on November 30, 2012.

On December 17, 2012, Husband filed his first interlocutory appeal, challenging the trial court's award of $15,000 in preliminary fees and costs. *See Hogshire v. Hoover* ("*Hogshire I*"), 2013 WL 6198238 (Ind. Ct. App. Nov. 27, 2013). On January 7, 2013, Husband asked for a stay of Provisonal Order # 2 pending appeal, which the trial court granted on February 4, 2013, subject to the condition that Husband post a $7,500 bond. Husband concedes that he never posted this bond.

At some point after the issuance of Provisonal Order # 2, Husband and Wife sold the marital residence and deposited the proceeds into an escrow account for division at the final hearing. No longer able to live in the marital residence at Husband's expense, Wife filed a petition to modify Provisonal Order # 2 on May 16, 2013. Following a third provisional hearing on June 24, 2013, the trial court issued Provisonal Order # 3 on September 6, 2013. In Provisonal Order # 3, the trial court ordered Husband to pay weekly maintenance of $750 to Wife, as well as to pay all of the outstanding fees for the completion of the business valuation. Ten days later, Husband filed his second interlocutory appeal to challenge the rulings of Provisonal Order # 3. *See Hogshire v. Hoover* ("*Hogshire II*"), 2014 WL 2927270 (Ind. Ct. App. June 27, 2014). Again, Husband requested a stay pending appeal, which the trial court denied on October 1, 2013.[]

On September 24, 2013, following Husband's failure to remit his first two maintenance payments, Wife filed a motion for rule to

show cause, alleging Husband to be "willfully and intentionally in contempt of" Provisional Order # 3. (Appellant's App. p. 21). Then, on October 3, 2013, Wife filed a second petition for contempt, claiming that Husband never posted the $7,500 cash bond required to stay his obligation to pay $15,000 per Provisional Order # 2. In addition to requesting that the court enforce Husband's compliance with the terms of both Provisional Orders, both of Wife's petitions included a demand for attorney fees incurred as a result of prosecuting the contempt. On October 25, 2013, the trial court conducted a hearing, during which both parties testified regarding their financial circumstances. Husband stipulated to the fact that he has not made payments in accordance with either of the Provisional Orders but asserted that his actions did not constitute contempt based on his financial inability to comply. Wife, however, insisted that Husband's financial declaration fails to reflect the full extent of his available funds and that he is capable of making the maintenance, attorney fee, and business valuation payments as ordered.

On November 5, 2013, the trial court entered its Judgment. In holding Husband in contempt, the trial court determined that "[h]e is willfully rejecting his responsibility to pay for [W]ife's [business valuation] expert and to pay her maintenance." (Appellant's App. p. 15). As a result, the trial court ordered Husband to pay $4,000 for the attorney fees Wife incurred in bringing the contempt action. Also, the trial court ordered that the escrowed proceedings from the sale of the marital residence be used to satisfy Husband's obligation under Provisional Order # 2 in the amount of $15,000, as well as for any maintenance payments owing under Provisional Order # 3.

On November 27, 2013, our court rendered its decision in *Hogshire I*, holding that[,] although it is permissible for a trial court to sua sponte award $10,000 in attorney fees, the trial court had abused its discretion by doing so in Provisional Order # 2 without first hearing evidence on Husband's financial circumstances. We remanded to the trial court for an

examination of the parties' resources. Seven months later, we issued our decision in *Hogshire II*. There, we reversed the portion of Provisional Order # 3 requiring Husband to pay $750 in weekly maintenance "and remand[ed] with instructions to modify the maintenance award taking into account Husband's earnings, living expenses, and other obligations imposed by the court's provisional orders." *Hogshire II*, 2014 WL 2927270, at *4. We further concluded that the trial court had abused its discretion by ordering Husband to pay for the outstanding and future fees of the business valuation expert based, in part, on Husband's inability to pay.

*Hogshire v. Hoover*, 2014 WL 5089291, at *1-2 (Ind. Ct. App. Oct. 9, 2014) ("*Hogshire III*").[1] In *Hogshire III*, we affirmed the trial court's order finding Husband in contempt, but remanded with instructions to the trial court to revise its judgment "such that the stated amounts of maintenance and other fees are consistent with our remand instructions in *Hogshire I* and *Hogshire II*." *Id.* at *8.

[4] Pending our memorandum decision in *Hogshire III*, on July 16, 2014, Wife filed a verified emergency petition for provisional maintenance. Following a hearing on that petition, on May 18, 2015, the trial court entered its order finding and concluding in relevant part as follows:

### *Wife's Income and Expenses*

### **Wife's Employment**

---

[1] Husband filed his appeal in *Hogshire III* from the trial court's order finding him in contempt prior to the date this court issued its memorandum decision in *Hogshire II*.

8)     Wife is seventy-six (76) years of age.

9)     Wife is unemployed.

10)    Wife claims to suffer from a number of physical ailments, including heart problems, uncontrolled anxiety and depression.

11)    Wife claims to suffer from the side effects of her medications.

12)    Wife is currently not under a physician's care.

13)    Wife's claims regarding her medical conditions are unsubstantiated by medical evidence.

14)    Wife is not seeking employment.

15)    Wife claims that she is unable to work due to her medical conditions.

16)    Wife's claim that she is unable to work due to her medical conditions is unsubstantiated by vocational evidence.

### Wife's Income

17)    Wife receives monthly social security payments of $860.

### Wife's Expenses

18)    Wife has the monthly expenses of $2967 . . . .

19)    Wife has expenses for car maintenance which vary.

20)    Wife has ongoing credit card expenses for credit cards taken out after this matter was filed.

### *Husband's Income and Expenses*

21) Husband is seventy-eight (78) years of age.

## Husband's Business Interests

22) Husband is the owner of two businesses.

* * *

33) In spite of $25,000 having been paid for a business evaluation, a business evaluation had not been completed.

* * *

## Husband's income

* * *

39) Husband's net income from Mr. Dan's in 2014 was $34,971.05 for the year or $2,914.25 per month.

* * *

42) In 2014 Husband received monthly distributions [as sole shareholder of Fresh Grill, LLC] of $4115.

* * *

44) In prior years, Husband took a salary from his corporations.

45) In 2014 Husband chose to take corporate distributions, when income is available, in lieu of salary.

46) In prior years, his salary was greater than his 2014 annual distributions.

47)     As sole shareholder of Fresh Grill, Husband has sole control over its net income.

48)     Husband receives a monthly social security retirement benefit of $2112.

* * *

53)     Husband pays Wife's medical insurance in the monthly amount of $219 and Husband pays Wife's prescription insurance in the monthly amount of $45.

54)     Husband also pays minimum monthly payment on the parties' credit cards.

55)     One of the cards is the Chase Freedom card.

56)     The Court previously ordered both parties not to charge against this card.

57)     However, Wife continues to use the card to pay her personal expenses.

58)     The Court finds that husband has monthly income of $9167 as follows:

|   |   |   |
|---|---|---|
| a. | Social Security | $2112 |
| b. | Mr. Dan's (net income) | $2914 |
| c. | Fresh Grill distributions | $4115 |
| d. | In-kind | $26 |

**Husband's Expenses**

59)     Husband has ongoing monthly expenses [that] are $7434[.]

60)     The Court does not include husband's maintenance payments previously ordered as it will be re-calculating the amount in this order.

61)     Husband states that he owes $140,000 in attorney fees in this matter.

* * *

81)     . . . [A]s sole shareholder of Fresh Grill, the Court notes that Husband has sole control over the payment of corporate expenses.

82)     One of Fresh Grill's expenses is a bi-weekly salary paid to its bookkeeper of $2038 or almost $53,000 per year.

## CONCLUSIONS OF LAW

83)     The Court understands that, on its face, Wife's age would make it difficult for her to find employment.

84)     [Indiana Code Section] 31-15-7-2 makes no provision for maintenance based on age.

* * *

### Method of Calculating Maintenance

93)     The Indiana Court of Appeals, in *Pham v. Pham*, 650 N.E.2d 1212 (Ind. Ct. App. 1995), reversed the trial court's award of maintenance with instructions to modify the maintenance award taking into account Husband's earnings, living expenses, and other obligations imposed by the court's provisional order.

94) In *Pham*, the Court of Appeals refers to Indiana Child Support Guideline 2 as being a useful reference point in determining the appropriate amount of award for spousal maintenance. 650 N.E.2d at 1215.

95) Child Support Guideline 2 provides, in part, that "Temporary maintenance may be awarded by the Court not to exceed thirty-five percent (35%) of the obligors['] weekly adjusted income . . . . Temporary maintenance and/or child support may be ordered by the court either in dollar payments or 'in-kind' payments of obligations."

96) Commentary to Indiana Child Support Guideline 2 provides that "it is recommended that temporary maintenance not exceed thirty-five (35%) of [the] obligor's weekly adjusted income. The maximum award should be reserved for those instances where the custodial spouse has no income or means of support, taking into consideration that spouse's present living arrangement (i.e., whether or not he or she lives with someone who shares or bears the majority of the living expenses, lives in the military residence with little or no expense, lives in military housing, etc.)"

97) Further, the commentary to Child Support Guideline 2 provides, "In computing temporary maintenance, in-kind payments, such as the payment of utilities, house payments, rent, etc. should also be included in calculating the percentage limitations."

98) Here, as in *Pham*, the parties have no un-emancipated children.

99) The Court concludes that it should look to Indiana Child Support Guideline 2 as a reference point in determining the appropriate amount of award for temporary spousal maintenance.

100)   However, the Court also concludes that it need not exclusively look to Child Support Guideline 2 in determining temporary spousal maintenance.

## The Parties' Adjusted Gross Income

101)   In doing so, the Court first looks at the adjusted gross income of each party.

102)   Wife's only source of income is social security payments of $860.00 per month.

103)   Husband's adjusted monthly income is $7312.  ($9167 - $1855 tax estimates).

104)   The parties have total adjusted gross income of $8172.

105)   Wife has 10.5% of the parties' adjusted gross income.

106)   Husband has 89.5% of the parties' adjusted gross income.

## The Percentage of Husband's Adjusted Gross Income to Initially be Included in Awarding Temporary Maintenance

107)   The Court next determines the percentage of Husband's adjusted gross income it will initially award Wife as temporary maintenance.

108)   Child Support Guideline 2 recommends that the maximum award be reserved where a spouse has no means of support.

109)   In this case, Wife has some means of support.  However, she only received 10.5% of the parties' adjusted gross income.

110) Because Wife has some means of support, the Court concludes that an award of maintenance based on 35% of Husband's adjusted gross income is not appropriate.

111) To account for Wife's adjusted gross income, the Court will reduce the 35% maximum percentage of husband's adjusted gross income it should consider by 10.5% (Wife's percentage of the parties' adjusted gross income).

112) Accordingly, the Court concludes that it should consider 31% of husband's adjusted gross income in determining an award of maintenance. (35% x 89.5% rounded down).

### Initial Temporary Maintenance Award

113) Initially, Wife should receive temporary maintenance in an amount equal to 31% of Husband's adjusted gross income.

114) Initially, Wife should be awarded weekly temporary maintenance in the amount of $523. ($7312 x 31% = $2267 x 12 = $27,204 divided by 52 weeks = $523 rounded down).

### Reduction of Temporary Maintenance Award Based on In-Kind Payments Made by Husband and Based on Credit Card Minimum Payments

115) Husband makes certain in-kind payments to Wife.

116) Child Support Guideline 2 provides, "In computing temporary maintenance, in-kind payments, such as the payment of utilities, house payments, rent, etc. should also be included in calculating the percentage limitations."

117) Instead of reducing the percentage of Husband's adjusted gross income considered in calculating temporary maintenance, the Court concludes that it is more equitable to simply give

Husband a credit against Wife's initial maintenance award for the in-kind payments he makes.

### Wife's Insurance Premiums Husband Pays

118) Husband pays Wife monthly in-kind payments of $259 for Wife's insurance payments.

119) The Court concludes that Wife's maintenance award of $523 should be reduced by $60 per week to account for these payments. ($259 x 12 = $3108 divided by 52 = $60 rounded up).

### Chase Freedom Card Minimum Payments Husband Pays

120) In addition, Husband pays $300 on the Chase Freedom card which Wife continues to use to pay her monthly expenses.

121) Husband requests that the Court order that the Chase Freedom account be closed.

122) However, the Court [herein] is ordering that the account remain open and is ordering that Wife be allowed to charge the $300 minimum on the account with Husband being ordered to pay the minimum amount each month.

123) In determining maintenance the Court concludes that Husband's $300 payment should also be considered as in-kind income paid to Wife.

124) The Court considered adding this to Wife's income in figuring out the income percentages of the parties.

125) However, the Court concludes that it is more equitable to simply give Husband a credit against Wife's initial maintenance award for the $300 payment he makes each month.

126) The Court concludes that Wife's maintenance award of $523 should be reduced by $69 per week to account for this $300 in-kind payment. ($300 x 12 = $3600 divided by 52 = $69 rounded down).

**Other Minimum Credit Card Payments Husband Pays**

127) Finally, in awarding maintenance, the Court also takes into consideration that Husband is making all the minimum payments on the parties' credit cards in addition to the Chase Freedom card.

128) Excluding the Chase Freedom card, Husband pays $1552 in minimum monthly credit card payments.

129) The Court concludes that Husband should be given some credit for these payments against Wife's maintenance award.

130) The Court concludes that Husband should be given a credit against Wife's temporary maintenance award in an amount equal to 10.5% of the monthly minimum credit card bills Husband pays, excluding the Chase Freedom card.

131) The Court concludes that Wife's maintenance award of $523 should be reduced by $38 per week to account for the monthly minimum credit card payments. (Total monthly expenses of $1552 x 10.5 = $163 x 12 = $1956 divided by 52 weeks = $38 rounded up).

132) *In doing so, the Court makes clear that it is not determining that Wife is only responsible for 10.5% of the credit card debt.*

133) *The Court is simply using the 10.5% figure as a basis for reducing Wife's initial maintenance award.*

134) *The percentage of the marital assets and debt will be determined at final hearing.*

## Wife's Maintenance Award

135) After making reductions from Wife's initial maintenance award of $523, the Court concludes that Wife's weekly temporary maintenance award should be $362. ($523 - $60 - $69 -$38 = $362).

136) With a monthly maintenance award of approximately $1569, with Wife's monthly social security payment of $860 and with Wife's ability to charge $300 per month on the Chase Freedom charge card, Wife still has a monthly income deficit of -$238.

137) The Court understands that, although the amount is not significant monetarily, it is significant to Wife given her small fixed income.

138) With an additional monthly expense for maintenance, Husband has positive monthly income of $164.

139) The Court understands that this amount is not significant.

140) Sadly, the parties' financial situation at the end of the month, more than anything else, reflects the realities of divorce in general and the realities of this divorce, which has been pending now for over three years, in particular.

141) However, it is significant to the Court in reaching its conclusion that Husband, unlike Wife, has variable income that is within his control.

142) As sole shareholder, Husband has the ability to control his distribution income.

143) Particularly, Husband, as the sole shareholder, has the ability to reduce his business expenses such as the annual payment of $53,000 for the services of a full time bookkeeper and

annual business deductions of over $98,000, significant expenses for a small corporation.

144)   A reduction of business expenses could result in greater distribution income to Husband which would help offset, among other things, the attorney fees that he owes.

145)   Reductions in Fresh Grill's business expenses might result in less income.

* * *

147)   Reductions in Fresh Grill's business expenses may not be palatable to Husband in a perfect world.

148)   However, his world is not perfect at this moment.  It is in crisis.

149)   Again, the crisis is an unfortunate reality of this prolonged divorce.

## CHASE FREEDOM ACCOUNT

150)   Husband requests that the Court order that the Chase Freedom credit card be closed.

151)   The Court concludes that it is not equitable to do so at this time.

152)   Given Wife's limited income and given her expenses, she needs an ability to have some credit available to her in case of an emergency.

153)   The Court concludes that Husband should continue to make minimum monthly payments of $300 on the Chase Freedom card.

154) The Court concludes that Wife should be able to charge up to $300 per month on the Chase Freedom card.

155) However, the Court also concludes that any charges Wife makes on the Chase Freedom card, after the date of this order, should be subject to allocation at final hearing.

## ORDER

156) The Court ORDERS Husband to pay Wife temporary maintenance in the weekly amount of $355 commencing Friday May 22, 2015 and a like amount each Friday thereafter until further order.

157) The Court further ORDERS Husband to continue to pay Wife's insurance premiums considered as in-kind payments in determining temporary maintenance.

158) The Court further ORDERS Husband to continue to make the $300 minimum Chase Freedom card payments.

* * *

160) The Court further ORDERS Husband to continue making the monthly minimum payments of the parties' other credit cards.

Appellant's App. at 30-45 (emphasis added). This appeal ensued.[2]

---

[2] An order requiring one party to pay temporary support and maintenance to another party is an order for the payment of money. *Burbach v. Burbach*, 651 N.E.2d 1158, 1162 (Ind. Ct. App. 1995). Consequently, the trial court's order awarding Wife temporary maintenance is an appealable interlocutory order as of right. *Id.*

# Discussion and Decision

[5] Husband contends as follows:

> The evidence in this cause included the statutory presumption that an equal division of the marital property between the parties is just and reasonable. Ind. Code § 31-15-7-5. The findings in this cause do not support the trial court's judgment that the Wife overcame the presumption and that marital debt should be divided 89.5% to Husband and 10.5% to Wife.

Appellant's Br. at 17.[3] Husband maintains that the trial court should "recalculate temporary maintenance crediting the Husband with 50% of the payments of the marital debt, thus reducing Wife's award of temporary maintenance to $183 per week retroactive to May 18, 2015." *Id.* at 24. We cannot agree.

[6] Indiana Code Section 31-15-4-8[4] provides in relevant part as follows:

> (a) The court may issue an order for temporary maintenance or support in such amounts and on such terms that are just and proper. However, the court shall require that the support payments be made through the clerk of the circuit court as trustee for remittance to the person entitled to receive benefits, unless the court has reasonable grounds for providing or approving another method of payment.

---

[3] We note that Husband makes no contention that Wife is not entitled to temporary maintenance.

[4] Neither party cites this statute on appeal.

A trial court's award of temporary maintenance is reviewable only for an abuse of discretion. *See Bojrab v. Bojrab*, 810 N.E.2d 1008, 1015 (Ind. 2004). An abuse of discretion occurs when the trial court's decision is against the logic and effect of the facts and circumstances before it. *Fort Wayne Lodge, LLC v. EBH Corp.*, 805 N.E.2d 876, 882 (Ind. Ct. App. 2004).

[7] Here, Husband makes no cogent argument to show that the temporary maintenance award is not just and reasonable under Indiana Code Section 31-15-4-8 or that the trial court otherwise abused its discretion in making the award. Rather, Husband appears to contend that the trial court was obliged to calculate the temporary maintenance award based upon a division of the marital estate pursuant to Indiana Code Section 31-15-7-5, which presumes that an equal division of the marital property between the parties is just and reasonable. But, in awarding temporary maintenance to Wife, the trial court had no reason to divide the marital estate, and Indiana Code Section 31-15-7-5 is inapplicable. Rather, the trial court shall divide the marital estate in the final decree, which has yet to be entered. Indeed, in its order, the trial court explicitly stated that it was "not determining that Wife is only responsible for 10.5% of the credit card debt" and that the "percentage of the marital assets and debt will be determined at final hearing." Appellant's App. at 42.

[8] We observe that the trial court has discretion to determine how to treat the temporary maintenance at the final distribution. *Rodgers v. Rodgers*, 503 N.E.2d 1255, 1258 (Ind. Ct. App. 1987), *trans. denied*. Accordingly, we have held that a trial court did not abuse its discretion when it accounted for the temporary

maintenance in the final distribution, *Fiste v. Fiste*, 627 N.E.2d 1368, 1372 (Ind. Ct. App. 1994), *disapproved on other grounds by Moyars v. Moyars*, 717 N.E.2d 976, 979 n.2 (Ind. Ct. App. 1999), *trans. denied*, but we have also held that a trial court did not abuse its discretion when it refused to credit temporary support payments against a final distribution, *Rodgers*, 503 N.E.2d at 1258. But these are matters for the final hearing and the final decree.

[9] We hold that the trial court did not abuse its discretion when it calculated Husband's temporary maintenance obligation. Husband has not shown that the award is unjust or improper. I.C. § 31-15-4-8. Indeed, the trial court's findings and conclusions are exhaustive and illustrate the court's deep understanding of the parties' assets and liabilities, as well as the parties' respective abilities to pay their monthly expenses.

[10] Affirmed.

Riley, J., and May, J., concur.